L.W., Appellant (Plaintiff Below),

v.

WESTERN GOLF ASSOCIATION, and Evans Scholars Foundation, Appellees (Defendants Below).

No. 79S02–9907–CV–379.

Supreme Court of Indiana.

July 12, 1999.

Michael J. Stapleton, Cheryl M. Knodle, Ball, Eggleston, Bumbleburg & McBride, Lafayette, Indiana, Attorneys for Appellant.

Bryce Bennett, Jr., Laura K. Taylor, Stephen M. Wagner, Riley Bennett & Egloff, Indianapolis, Indiana, Attorneys for Appellee.

## ON CIVIL PETITION FOR TRANSFER

SELBY, J.

Appellant L.W. brings this appeal of an adverse summary judgment ruling in a negligence action. This case is one of three that we decide today on the common premises liability issue of whether a landowner/invitor ever owes an invitee a duty to take reasonable care to protect the invitee from the criminal acts of a third party. After being raped in the building where she lived, L.W. filed a complaint for damages against the owners of the building, Western Golf Association ("Western Golf") and Evans Scholars Foundation ("ESF"). Western Golf and ESF filed a joint motion for summary judgment on the grounds that neither owed a duty to L.W. and, in the alternative, that any action on their part was not the proximate cause of the injury. After a hearing, the court granted the motion. L.W. appealed the trial court's ruling to the Court of Appeals, and the Court of Appeals affirmed the trial court's decision. *L.W. v. Western Golf,* 675 N.E.2d 760 (Ind.Ct.App.1997). L.W. then filed a petition for transfer with this Court. We now grant transfer to address the following issue: whether defendants owed L.W. a duty of reasonable care to protect her against foreseeable criminal acts. We hold that the trial court properly granted summary judgment.

### FACTS

On the night of October 15, 1992, L.W. and some friends went to a bar located in West Lafayette, Indiana. At the time, L.W. was a sophomore and Evans Scholar at Purdue University. The Evans Scholarship, as sponsored by Western Golf and distributed by ESF, is awarded to deserving golf caddies so that they may attend certain universities. As required in order to keep her scholarship at Purdue, L.W. lived in the Evans Scholar house. After becoming intoxicated at the bar, L.W. was helped back to the house and to her room by several of her friends.

One of the people who helped L.W. get to her room was Brent Jenkins. At the time, Jenkins was a freshman Evans Scholar and also a resident of the Evans Scholar house. L.W.'s friends laid her on her bed. She was fully clothed and passed out. As he was leaving the room with everyone else, Jenkins removed L.W.'s shoes.

After leaving L.W.'s room, Jenkins returned to his own room and listened to some music. Later, he went to the computer room in the house so that he could type an English paper. The door to the computer room, however, was locked, so he had to return to his room in order to get the key. As he was walking back to the computer room, he passed by L.W.'s room. Jenkins entered L.W.'s room and raped her as she lay unconscious. Jenkins confessed to the rape and he was subsequently convicted and incarcerated.

### DISCUSSION

L.W. brought a negligence action against Western Golf and ESF for the damages she sustained as a result of the rape. L.W. alleged that defendants had a duty to provide for a safe living environment, that defendants breached this duty, and that the breach proximately caused her injuries. As was true in two other cases decided today, *Delta Tau Delta v. Johnson,* 712 N.E.2d 968. (Ind.1999) and *Vernon v. Kroger Co.,* 712 N.E.2d 976 (Ind.1999), defendants filed a motion for summary judgment on the issue of duty. The court granted the motion. We now grant transfer to address the issue before us in this case, like the other cases, whether the trial court properly ruled on the issue of duty.

 This issue revolves around whether defendants owed plaintiff a duty to take reasonable care to protect her from the criminal acts of a third party. Indiana courts have held that, in certain factual situations, landlords have a duty to take reasonable precautions to keep the property safe for their tenants. *See Center Management Corp. v. Bowman,* 526 N.E.2d 228 (Ind.Ct.App.1988). This would seem especially true in this case as L.W. was required by defendants to live in the Evans Scholar house if she wished to keep her scholarship. This being so, we now confront the common question of the three opinions decided today: whether Western Golf and ESF owed L.W. a duty to take reasonable care to protect her against a third party criminal attack. As announced in the lead opinion, *Delta Tau Delta v. Johnson,* a

court answers this question by asking whether the totality of the circumstances demonstrates that the criminal act was reasonably foreseeable. 712 N.E.2d at ——. When determining whether the totality of the circumstances supports the imposition of a duty, a court must look to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable." *Id.* at 972. "A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973. While landowners have no duty to ensure invitee's safety, they do have a duty to take reasonable precautions to prevent foreseeable criminal acts against invitees.

The record provides sufficient evidence for us to find that defendants did not owe L.W. a duty to protect her from this criminal act under the circumstances of this case. The evidence shows that co-ed living at the Evans Scholar house was not always a pleasant experience for the women. For example, some of the male scholars had made sexually-charged comments to the female scholars and female scholars were sometimes placed in embarrassing situations (such as being tricked into walking in on males watching an X-rated movie). The record also shows that a male scholar was once about to hit a female scholar, but was tackled before he could. While the evidence casts the Evans Scholar house in a poor light and suggests that living in the Evans Scholar house as a woman was sometimes untenable, it does not show that a legal duty existed in this case. The record

does not contain evidence of prior violent acts or sexual assaults at the Evans house. Although these childish pranks and actions, even if isolated to the few individuals mentioned, are deplorable, we do not believe that it is enough on its own, at least as presented in this case, to make a rape reasonably foreseeable.[1]

Thus, we hold that defendants had no duty, based on a premises liability theory, to take reasonable care to protect L.W. from the criminal act of Jenkins. As to any other issues which were addressed by the Court of Appeals, we summarily affirm the decision of the Court of Appeals. Ind. Appellate Rule 11(B)(3).

## CONCLUSION

We affirm the grant of summary judgment.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs in result without separate opinion.

---

1. L.W. also presents, as evidence, a brochure produced by Purdue University. The brochure provided statistics on the occurrence of different crimes (including robbery, assault, burglary, and rape) on Purdue's West Lafayette campus. This evidence is not the same as that which was presented and considered in *Delta Tau Delta* (statistics which were inferentially known to the fraternity concerning rape and sexual assaults occurring at fraternity houses and concerning the increased likelihood of rape and sexual assault when alcohol was involved at a fraternity house). 712 N.E.2d at ——. Though both cases present crime statistics, the crime statistics in

*Delta Tau Delta* related strictly to fraternities and why a sexual assault was more likely to occur there and under those circumstances than elsewhere. Thus, the statistics in *Delta Tau Delta* showed the fraternity (as do prior similar incidents) that a sexual assault was reasonably foreseeable at the fraternity house under the circumstances that existed. The statistics in this case, however, show only that crimes such as this occur on college campuses, as they do elsewhere. The statistics, in other words, do not provide any basis for notice to defendants that a rape was any more foreseeable on their premises than elsewhere.