**NORTHERN INDIANA PUBLIC SERVICE COMPANY,**
Appellant (Defendant),

v.

**Grace SHARP, as the Administratrix of the Estate of Robert Sharp,**
Appellee (Plaintiff).

**No. 64S03–0306–CV–284.**

Supreme Court of Indiana.

June 27, 2003.

Paul A. Rake, Michel E. O'Neill, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellant.

David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, IN, Attorneys for Appellee.

## ON PETITION TO TRANSFER

RUCKER, Justice.

### Case Summary

An employee of a trucking company was electrocuted when the bed of his dump truck contacted an electric power line. The employee's estate sued the electric utility company responsible for the line alleging among other things that the company was grossly negligent. The case ultimately proceeded to trial and the jury returned a verdict in the estate's favor. On review the Court of Appeals reversed on grounds that the company owed no duty to the employee and thus was entitled to judgment as a matter of law.

### Facts and Procedural History

On November 27 and 28, 1990, an estimated seven inches of rain fell in an eight-hour period in Northwest Indiana. As a result, the Little Calumet River began overflowing its banks in the Town of Highland. The Town hired Krooswyk Trucking & Excavating, Inc., to build a makeshift dike in a parking lot to help prevent further flooding. Robert Sharp, an employee of Krooswyk Trucking, was responsible for driving a truck loaded with gravel to the site. When Sharp backed his truck and raised its bed to dump the gravel, electricity from overhead wires arced and energized the truck. Sharp was electrocuted when he stepped down from the truck onto the wet surface below. His estate sued both the Town of Highland and Northern Indiana Public Service Company ("NIPSCO"), the company responsible for turning off the electrical power.

The present appeal is the second arising from this case. In the first, the Court of Appeals reviewed the trial court's grant of summary judgment in favor of the Town of Highland and NIPSCO. *Sharp v. Town of Highland,* 665 N.E.2d 610 (Ind.Ct.App. 1996), *trans. denied ("Sharp I").* In that appeal, the Court of Appeals held that under the Indiana Civil Defense and Disaster Law of 1975,[1] Highland and NIPSCO were immune from liability for ordinary negligence contributing to Sharp's death. *Id.* at 618. However, unlike Highland, NIPSCO did not move for summary judgment on the issue of whether its alleged misconduct rose to the level of "willful misconduct, gross negligence, or bad faith," an exception to the immunity provided by Indiana Code section 10–4–1–8. *Id.* at 617. The Court of Appeals remanded the cause for trial on that issue. *Id.* at 618. At trial, NIPSCO moved for a judgment on the evidence at the end of the estate's case in chief and renewed the motion at the close of all the evidence. The trial court denied both motions. Finding that Sharp and NIPSCO were each fifty percent at fault for Sharp's death, the jury returned a verdict in favor of the estate in the amount of $750,000.

NIPSCO appealed and the Court of Appeals addressed two issues: (1) whether the trial court admitted evidence that was precluded by the Court's previous judgment; and (2) whether the trial court erred in denying NIPSCO's Motion for Judgment on the Evidence. *NIPSCO v. Sharp,* 732 N.E.2d 848, 851 (Ind.Ct.App. 2000) ("*Sharp II*"). As to issue one, the Court of Appeals found no error. However concerning issue two, the Court reversed concluding that the estate failed to prove that NIPSCO owed Sharp a duty and thus failed to satisfy the requisite duty element for its negligence claim. *Id.* at

---

1. The Act provides emergency management measures "to protect the public peace, health, and safety, and to preserve the ... property of the people of the state," Ind.Code § 10–4–1– 2(a), in the event of emergencies resulting from manmade or natural disasters. *See* I.C. §§ 10–4–1–1–29.

859. We grant the estate's petition to transfer and affirm the judgment of the trial court.

### Discussion

 In reaching the conclusion that the estate failed to prove NIPSCO owed Sharp a duty, the Court of Appeals applied the three-part balancing test set forth in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991). We disagree with this analytical approach. In our view, the three-part balancing test articulated in *Webb,* is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated. For example, there is no need to apply *Webb* to determine what duty a business owner owes to its invitees. The law in this area is well settled: "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992). In like fashion for example, there is no need to apply *Webb* to determine the duty school authorities owe their students. This Court has long held they owe a duty to "exercise reasonable care and supervision for the safety of the children under their control." *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 706 (1974); *see also Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 974–75 n. 1 (Ind.2001) (specifically declining to apply the three-part *Webb* test to determine school's duty to its students).

As applied to this case our courts have long held, "companies engaged in the generation and distribution of electricity have a duty to exercise reasonable care to keep distribution and transmission lines safely insulated in places where the general public may come into contact with them."

*NIPSCO v. E. Chicago Sanitary Dist.,* 590 N.E.2d 1067, 1072 (Ind.Ct.App.1992) (quoting *Brown v. NIPSCO,* 496 N.E.2d 794, 797 (Ind.Ct.App.1986), *trans. denied* ); *accord Petroski v. NIPSCO,* 171 Ind.App. 14, 354 N.E.2d 736, 741 (1976); *see also Rogers v. Grunden,* 589 N.E.2d 248, 256 (Ind. Ct.App.1992), *trans. denied,* (declaring "electric utilities have a duty to exercise such care as a person of reasonable prudence would use under like conditions and circumstances"). Because the duty that NIPSCO owes to members of the general public already has been declared, it is unnecessary to apply the three-part balancing test announced in *Webb* to determine the duty NIPSCO owed Sharp, a member of the general public. We already know. It has "a duty to exercise reasonable care to keep [its] distribution and transmission lines safely insulated in places where the general public may come into contact with them." *NIPSCO,* 590 N.E.2d at 1072 (citation omitted).

Although the foregoing articulation of duty is commonly discussed in the context of ordinary negligence, it is important also in the discussion of gross negligence one of Sharp's claims against NIPSCO. Gross negligence is generally defined as "[a] conscious, voluntary act or omission in reckless disregard of ... the consequences to another party." Black's Law Dictionary 1057 (7th ed. 1999); *see also Stump v. Commercial Union,* 601 N.E.2d 327, 332 n. 5 (Ind.1992) (accepting for purposes of a certified question the definition of gross negligence as " 'the intentional failure' to perform a duty 'in reckless disregard of the consequences as affecting the life or property of another' " (quoting Black's Law Dictionary 931 (5th ed. 1979))).

 If this were a case of ordinary negligence, then the estate would have the burden of demonstrating that NIPSCO merely failed to exercise its duty of care.

But the claim here is gross negligence, not ordinary negligence. And although the duty NIPSCO owed Sharp did not change, the level of conduct amounting to a breach of that duty is quite different. More precisely, to prove gross negligence the estate had the burden of demonstrating that NIPSCO breached its duty to exercise reasonable care to keep its transmission lines safely insulated in places where the general public may come into contact with them by engaging in a conscious, voluntary act or omission in reckless disregard of the consequences to Sharp.

 Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind. 1992). Whether a particular act or omission is a breach of duty is generally a question of fact for the jury. *Id.* at 1372. It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.*

 Pointing to evidence that Highland Fire Chief Bill Haas instructed NIPSCO to shut off all power to the flooded area, the estate contends that NIPSCO's failure to comply with this directive evinced a reckless disregard of the consequences to the general public, including Sharp. At trial, Chief Haas testified, "I wanted everything shut off," to protect the people in the housing subdivision, the rescue workers, firemen and those in the trucks. R. at 922, 924–25. The Chief also testified that he expected the power to be shut off by noon, and that his subsequent actions and decisions were based upon NIPSCO's assurances that the power would be shut off. R. at 874–76, 922. NIPSCO counters that the final orders it received were not from Chief Haas, but from Mike Pipta, a Highland pump station manager. Thus, according to NIPSCO, it cannot be held liable for Sharp's death because it was required to follow Pipta's order. However the record shows that contrary to NIPSCO's assertion that Pipta "ordered" them to leave the power on, Pipta testified that NIPSCO approached him and "informed" him that they would be shutting off the power in the flooded area, but added that it could "isolate" or leave the power on at the pump station, if Pipta so desired. R. at 1588, 1609–10. Pipta responded affirmatively. *Id.* In other words, NIPSCO made it clear that it would be shutting off all power to the flooded area, excluding the pumping station. Also, as pump station manager, Pipta was clear that his only concern was leaving the power on to the pump station. R. at 1588, 1612, 1620–21. Accordingly, he never "ordered" NIPSCO not to cut the power off in the flooded area. R. at 1621. In his words, "[a]ll's [sic] I know is he said they [NIPSCO] could isolate the station. What exactly that meant, I didn't know, other than the pump station would be running." R. at 1621–22. In light of the testimony cited above, the estate contends that NIPSCO "directly contravened the Town's directive that it turn off the power to the entire flood area" in reckless disregard of the consequences to Sharp. Appellee's Br. at 16–19, 39.

 The record is clear that this trial was contentious and highly contested. It involved scores of witnesses and exhibits and produced a transcript of seven volumes. However, the evidence was not without conflict. And precisely because more than a single inference can be drawn from the disputed facts, the question of whether NIPSCO breached its duty to Sharp was a matter for the jury to decide. Just as important, NIPSCO is appealing from the trial court's denial of its motion for judgment on the evidence. In reviewing a challenge to a ruling on a motion for judgment on the evidence our standard of

review is the same as it is for the trial court. *Kirchoff v. Selby*, 703 N.E.2d 644, 648 (Ind.1998). Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." Ind. Trial Rule 50(A). When the evidence, together with the reasonable inferences to be drawn therefrom, would allow reasonable people to come to differing conclusions, then judgment on the evidence is improper. *Bonnes v. Feldner*, 642 N.E.2d 217, 220 (Ind.1994). Because reasonable people could come to different conclusions as to whether NIPSCO's conduct rose to the level of gross negligence, the trial court properly denied NIPSCO's motion for judgment on the evidence.

### Conclusion

We affirm the jury verdict and the trial court's judgment.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

BOEHM, J., dissents with separate opinion.

BOEHM, Justice, dissenting

I respectfully dissent. I do not find any evidence supporting a finding of gross negligence on NIPSCO's part. Taking the evidence most favorable to the verdict as recited by the majority, the most that can be said is that NIPSCO maintained the power to the pumping station after its operator requested that and began steps to turn off the power to the rest of the area. The power line to the pumping station was twenty feet in the air. I cannot see any basis to conclude that NIPSCO intentionally disregarded any duty to anyone. At the very most it was negligent, and even that seems a stretch, given the obvious value under these stressed circumstances of keeping the power to the pumps.