**PARAGON FAMILY RESTAURANT, d/b/a Round the Corner Pub, Appellant (Defendant below),**

v.

**Mario BARTOLINI, Jr., Appellee (Plaintiff below).**

No. 45S03–0211–CV–608.

Supreme Court of Indiana.

Dec. 9, 2003.

Thomas A. Carton, Bullaro & Carton, Chtd., Munster, IN, James R. Branit, Bullaro & Carton, Chtd., Chicago, IL, Attorneys for Appellant.

George T. Patton, Jr., Carrie L. Wagner, Bose McKinney & Evans, LLP, Indianapolis, IN, Barry D. Sherman, Kristen D. Hill, Barry D. Sherman & Assoc., Hammond, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Paragon Family Restaurant, d/b/a Round The Corner Pub ("the Pub") appeals from a $280,000 jury verdict and judgment for the plaintiff, Mario Bartolini, arising from an assault on Bartolini by underage patrons of the Pub in its parking lot. The Court of Appeals affirmed in part, reversed in part, and remanded for a new trial. *Paragon Family Restaurant v. Bartolini*, 769 N.E.2d 609 (Ind.Ct.App.2002). We granted transfer, 783 N.E.2d 701 (Ind.2002), and now affirm the judgment of the trial court.

In its appeal, the Pub claims reversible error resulted from the denial of its motion for judgment on the evidence, from the denial of its motion to correct errors, and from the allegedly improper closing argument of plaintiff's counsel.

**Motion for Judgment on the Evidence**

At the close of Bartolini's evidence, the Pub moved for judgment on the evidence. Its motion was denied by the trial court.

On appeal, the Pub contends that it was entitled to judgment on the evidence because of Bartolini's failure of proof on the elements of duty and proximate cause.[1]

 The applicable appellate standard for review is well-established:

> It is axiomatic that in reviewing the trial court's ruling on a motion for judgment on the evidence *the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party.* Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper.

*Sipes v. Osmose Wood Preserving Co.*, 546 N.E.2d 1223, 1224 (Ind.1989) (*quoting Jones v. Gleim*, 468 N.E.2d 205, 206–07 (Ind.1984)); *see also Northern Indiana Public Service v. Sharp*, 790 N.E.2d 462, 467 (Ind.2003); *Kirchoff v. Selby*, 703 N.E.2d 644, 648 (Ind.1998); *Benante v. United Pacific Life Ins. Co.*, 659 N.E.2d 545, 547 (Ind.1995); and *Clark v. Wiegand*, 617 N.E.2d 916, 918 (Ind.1993).

The Pub first contends that Bartolini has failed to demonstrate that it owed him a duty because he did not present any evidence that Paragon had knowledge of any violent tendencies of Bartolini's assailants. It urges that serving an underage customer, or serving a customer beyond the point of intoxication, is not enough to

---

1. The Appellant's Appendix does not provide the contents of the motion, but Bartolini does not argue that the Pub failed to raise its claims at trial.

make the customer's commission of a criminal battery foreseeable.

Bartolini had been a customer of the Pub on the Friday night of the incident, arriving about 11:00 p.m. Approximately 1:00 a.m., Jeffrey Todd and John Mattull arrived at the Pub. Mattull was twenty-one but Todd was under twenty-one years of age, and the Pub did not check for identification. The Pub served beer to both Todd and Mattull. Todd had frequented the Pub on ten or fifteen prior occasions and his identification had never been checked. While in the Pub, Todd and Mattull appeared loud and obnoxious to at least one other patron, yelling several times. Todd testified that he and Bartolini "had words" in the Pub, and there may have been "high anxiety" between them. App. of Appellant at 100. At closing time, about 3:30 a.m., Bartolini left the bar with his female friend, and was walking her to her car in the Pub's parking lot. As Todd and Mattull left the Pub, one of them punched and knocked over a stop sign that was mounted in a tire or bucket of cement, and then Todd threw a bottle in the air which burst on the concrete. When Todd and Mattull got to the parking lot, they began taunting Bartolini. A waitress advised the Pub's bartender and night manager of the disturbance in the parking lot. The ensuing verbal altercation between Todd and Bartolini became physical. Employees of the Pub, including the bouncer, stood by for five or six minutes without doing anything as the argument escalated in the parking lot. The bantering included Todd's threat to Bartolini: "Look, buddy, we're going to get you. We're going to kill you, and if it ain't tonight or tomorrow, but we're going to kill you." App. of Appellant at 342. Eventually, Mattull lunged at Bartolini who fell to the ground, striking his head, and Todd and Mattull then both continued to viciously attack Bartolini. The bouncer eventually was able to pull Mattull away from Bartolini, but Todd continued kicking and hitting him. Bartolini suffered serious injuries.

Landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks. *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 973 (Ind.1999). In addition, we have observed that the duty of a business to exercise reasonable care extends to keeping its parking lot safe and providing a safe and suitable means of ingress and egress. *Vernon v. Kroger Co.,* 712 N.E.2d 976, 979 (Ind.1999). We have further recognized that an individualized judicial determination of whether a duty exists in a particular case is not necessary where such a duty is well-settled. *Northern Indiana Public Service v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003). Thus, there is usually no need to redetermine what duty a business owner owes to its invitees because the law clearly recognizes that "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct." *Id., quoting Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992). This duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor. *Muex,* 596 N.E.2d at 267.

In three cases handed down together four years ago, this Court held that the determination of whether a landowner owed an invitee a duty to take reasonable care to protect the invitee against a third party criminal attack requires consideration of the totality of the circumstances to determine whether the criminal act was reasonably foreseeable. *L.W. v. Western*

*Golf Ass'n,* 712 N.E.2d 983, 984–985 (Ind. 1999); *Vernon,* 712 N.E.2d at 979; *Delta Tau Delta,* 712 N.E.2d at 973. This analysis includes looking to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents." *Western Golf,* 712 N.E.2d at 985 (holding incidents of isolated childish pranks and actions in college co-ed living facility, absent evidence of prior violent acts or sexual assaults, do not make rape foreseeable); *Vernon,* 712 N.E.2d at 980 (holding frequent shoplifting and physical confrontations with escaping shoplifters, plus frequent police runs to premises, shows reasonable foreseeability that a shopper might be injured by crime); and *Delta Tau Delta,* 712 N.E.2d at 974 (holding that prior instance and information regarding sexual assaults at fraternity house demonstrated reasonable foreseeability of a sexual assault). While the number, nature, and location of prior similar incidents are substantial factors, "the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973. We emphasized that "when the landowner is in a position to take reasonable precautions to protect his guest from a foreseeable criminal act, courts should not hesitate to hold that a duty exists." *Id.* at 974.

Upon the question of whether an individualized redetermination of duty is necessary where the general duty is otherwise well-settled, there is thus a procedural inconsistency between *Sharp* and the trilogy of *Western Golf, Vernon,* and *Delta*

*Tau Delta.* There is no doubt, however, that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability. We believe that *Sharp* provides the better answer. Where, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty. The court's function was merely to adequately inform the jury of the applicable duty, and the jury was then to determine whether the Pub breached this duty of reasonable care to protect its invitees from foreseeable criminal attacks. In ruling upon a motion for judgment on the evidence asserting the absence of a well-settled duty, a trial court need only make a general determination as to whether such duty is generally applicable to the nature of the case presented by the evidence. In the present case, the well-settled duty was sufficiently established merely by evidence that Bartolini, a customer of the Pub, was beaten in the Pub parking lot as he was leaving. Upon receiving instructions as to the general nature of the Pub's duty,[2] the jury was then able to evaluate whether Bartolini's injuries resulted from a criminal attack that was reasonably foreseeable to the Pub and for which it failed to exercise reasonable care.

The parties' disagreement regarding various items of evidence related to the specific events and conduct of the Pub's employees on the night of the incident is therefore irrelevant to the trial court's denial of the Pub's motion for judgment on the evidence. Urging that there is suffi-

---

2. The trial court instructed the jury as follows:

A business owner or operator is under a duty to exercise reasonable care to protect its patrons against intentional harmful acts of third parties if the occurrence of those third party acts was reasonably foreseeable to the business owner or operator based on the totality of the circumstances.

Record at 515.

cient evidence to support the trial court's determination of duty, Bartolini points to evidence that Todd and Matull were rowdy in the bar, that the Pub admitted and served underage drinkers, that Todd and Matull had exhibited violence at the stop sign as they left the bar in the presence of the bouncer, and that the bar manager and bouncer stood around for five or six minutes while the assailants engaged in an escalating argument with Bartolini. The Pub disputes each of these evidentiary claims, primarily emphasizing that Bartolini should not be able to use facts that arose long after the time when the Pub permitted his underage assailants to enter the bar. The Pub argues that the violence toward the stop sign does not suggest that the assailants would savagely beat a human being, and that its bouncer did not idly stand by but actively restrained one of the assailants and did everything possible to prevent the beating. These items of disputed evidence were matters for the jury to evaluate in determining whether the Pub breached its duty to exercise reasonable care to protect Bartolini from reasonably foreseeable intentional acts of other persons on its premises.

We therefore decline to find error in the denial of the Pub's motion for judgment on the evidence with respect to the issue of duty.

The Pub also argues that the trial court should have granted its motion for judgment on the evidence because Bartolini's evidence failed to establish the element of proximate cause. In particular, the Pub argues that at the time of the Pub's negligence in permitting Todd to enter, it was not reasonably foreseeable that Todd would commit criminal battery on Bartolini, and that the criminal attack on Bartolini was an intervening superceding cause of his injuries.

Bartolini responds that the evidence indicated that the Pub was known as a place that underage drinkers could enter and be served; that the owner and manager knew that younger drinkers were more inclined to be rowdy and out of control; that if the Pub had turned Todd away, he and Matull would have left the Pub and gone elsewhere; that Todd had been loud and obnoxious in the bar that evening; that upon leaving the Pub he violently punched a stop sign, smashed a bottle, and then made threats against Bartolini in the parking lot; and that the Pub's night manager and bouncer stood by for several minutes as the verbal altercation escalated into the violent beating of Bartolini.

A negligent act is said to be the proximate cause of an injury "if the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Bader v. Johnson,* 732 N.E.2d 1212, 1218 (Ind.2000). At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct. *Id.* "[L]iability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission." *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 108 (Ind.2002).

The doctrine of superseding or intervening causation provides that when a negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation, the original wrongdoer is relieved of liability. *Control Techniques,* 762 N.E.2d at 107. A subsequent act is "superseding" when the harm resulting from the original negligent act "could not have been reasonably foreseen by the original negligent actor." *Id. (quoting Vernon,* 712

N.E.2d at 981; *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 520 (Ind. 1994)). "Whether the resulting harm is 'foreseeable' such that liability may be imposed on the original wrongdoer is a question of fact for a jury." *Control Techniques,* 762 N.E.2d at 107.

■■■ The foreseeability requirement for proximate cause imposes the same limitations on liability as does the superseding cause doctrine. *Id.* at 108. The doctrine "adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation." *Id.* The essence of the Pub's claim that Bartolini failed to prove proximate cause is its assertion of insufficient evidence of foreseeability, which is the same factor that determines his claim of intervening cause.

■ To resolve the Pub's appellate claim that the trial court should have granted its motion asserting lack of evidence of proximate cause, we consider only the evidence and reasonable inferences most favorable to Bartolini, the nonmoving party. As previously noted, the Pub is not entitled to prevail on its motion for judgment on the evidence if there is any probative evidence or reasonable inferences allowing reasonable people to differ as to the result. The trial evidence was conflicting and such that reasonable fact-finders could differ as to whether the Pub knew or should have known that the criminal acts that injured Bartolini were foreseeable. We conclude that there exists probative evidence or reasonable inferences to establish that Bartolini's injuries were reasonably foreseeable as the natural and probable consequence of the Pub's admitting and serving Todd, who was underage, and of its failing to act to prevent or interrupt the aggressive conduct of Todd and Mat-

tull and their eventual attack upon Bartolini in the Pub's parking lot. The trial court did not err in denying the Pub's request for judgment on the evidence asserting failure to show proximate cause.

## Motion to Correct Error

The Pub contends that the trial court erroneously denied its motion to correct error. It argues that the jury's verdict was against the weight of the evidence, that its allocation of fault was contrary to the law and the facts, and that Bartolini's closing argument was improper.[3]

■ Pursuant to Indiana Trial Rule 59(J), a trial court is required to take such action as will cure any "prejudicial or harmful error," to grant a new trial on a motion to correct error if the court determines that the jury verdict is "against the weight of the evidence," and to enter judgment if it determines that the jury verdict is "clearly erroneous as contrary to or not supported by the evidence." Ind. Trial Rule 59(J). The standard of appellate review of trial court rulings on motions to correct error is abuse of discretion. *Sanchez v. State,* 675 N.E.2d 306, 310 (Ind. 1996).

■ The Pub first contends that it is entitled to a new trial because the jury's liability determination was contrary to the weight of the evidence. It argues that there "was no evidence to suggest that Todd's and Mattull's criminally willful and malicious aggravated battery would be the natural, probable and foreseeable result of any act or omission by [the Pub]." Br. of Appellant at 31. While Trial Rule 59(J) permits the trial judge to weigh conflicting evidence, it "is not intended to invite the trial judge to cavalierly substitute his evaluation of the evidence in place of a con-

---

3. The Appellant's Appendix does not provide the contents of the motion, but Bartolini does not argue that the Pub failed to raise its claims at trial.

trary evaluation made by the jury." *Ingersoll–Rand Corp. v. Scott,* 557 N.E.2d 679, 684 (Ind.Ct.App.1990). When, as in this case, the trial court declines to intervene and refuses to set aside the jury verdict, it is not the province of an appellate court to do so "unless the verdict is wholly unwarranted under the law and the evidence." *Indian Trucking v. Harber,* 752 N.E.2d 168, 179 (Ind.Ct.App.2001). Having discussed the conflicting evidence *supra,* we do not find the jury verdict to be wholly unwarranted. The trial court did not abuse its discretion in refusing to find that the jury's liability determination was contrary to the weight of the evidence.

■■■ The Pub also asserts that it is entitled to a new trial because "the jury's allocation of fault is against the weight of the evidence." Br. of Appellant at 34. It argues that the verdict finding the Pub to be 80% at fault and Bartolini's attackers, Todd and Mattull, to each be 10% at fault "shocks the conscience and cannot stand," Br. of Appellant at 31, and that it has "no possible justification." Br. of Appellant at 32.

Bartolini responds in part that, where a claim is based on the breach of a business owner's duty to protect its customers from the reasonably foreseeable criminal acts of others, this duty of care and its corollary remedy would be negated if as a matter of law greater fault must always be allocated to the criminal perpetrators.

■■■ Under the Indiana Comparative Fault Act, the jury considers "the fault of all persons who caused or contributed to cause the alleged injury." Ind. Code § 34–51–2–7(b). The Act declares that the "requirements of causal relation" apply to the determination of fault. I.C. § 34–51–2–3. This Court recently observed that when a jury finds that the conduct of a second actor was a superseding cause foreclosing the first actor as a

proximate cause of the claimed injury, "[t]his is simply another way of saying, in comparative fault terms, that the original actor did not cause the harm and receives zero share of any liability." *Control Techniques,* 762 N.E.2d at 109. Under this view, a jury's assessment of proportional fault includes consideration of the relative degree of causation attributable among the responsible actors. The process by which a jury analyzes the evidence, reconciles the views of its members, and reaches a unanimous decision is inherently subjective and is entitled to maximum deference. The Comparative Fault Act entrusts the allocation of fault to the sound judgment of the fact-finder.

While the trial court could well have decided otherwise under the evidence and ordered a new trial in this case, *see, e.g., Barnard v. Himes,* 719 N.E.2d 862, 866 (Ind.Ct.App.1999), here it exercised its discretionary power in favor of letting the jury allocation stand. We acknowledge that the jury and the trial court in this case may have chosen to allocate a greater proportion of fault to the Pub than to the assailants because the opportunity for the beating would not even have existed had the Pub not failed to restrict Todd from entering its bar or had it taken appropriate action to prevent or stop the attack on its parking lot. In other words, the weight given to the causative role of the Pub may have exceeded that given the relative degree of intentionality of the perpetrators. We therefore decline to find an abuse of discretion by the trial court in refusing to order a new trial on the allocation of damages.

■■■ The Pub's final argument in favor of a new trial is that Bartolini's closing argument was improper. In particular, the Pub challenges the following portion of Bartolini's closing:

But your verdict can also do something else. It can send a message out, loud and clear, to every drinking establishment in our community by implicitly telling them it's their legal, it's their moral, it's their social responsibility to check I.D.'s at the door. Now, it won't always stop an intentional criminal act by an unruly patron. Some kids will slip through the cracks anyway. They've got pretty authentic looking I.D.'s. But it will go a long way towards stopping it, and it is beyond all doubt that it would have stopped it in this case. And so, at this moment, you are the conscience of our community. You can send this message to the restaurants and taverns. It isn't as though we're numbers or robots. We are people. We matter. And you could tell them, "You're not going to get away with this."

App. of Appellant at 530. Noting that the Pub had not presented an objection to this argument during trial, the trial court denied the motion to correct error without considering this claim. App. of Appellant at 6. To seek appellate relief based on alleged improprieties in a closing argument, a party "must promptly interpose and state its objection to the language or argument and request the court to so instruct the jury as to counteract any harmful effect of such language or argument." *Ritter v. Stanton*, 745 N.E.2d 828, 856 (Ind.Ct.App.2001), *trans denied*. Having failed to object at trial, the Pub may not present this issue on appeal.

### Conclusion

Having previously granted transfer, we now find no error in the trial court's denial of the defendant-appellant's motion for judgment on the evidence and its motion to correct error. The judgment of the trial court is affirmed.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

SHEPARD, C.J., dissenting.

I find myself in agreement with the unanimous panel of the Court of Appeals in concluding that the jury's verdict was contrary to the evidence. As they said in ordering a new trial: "Although the Pub failed to maintain security in the parking lot, Todd and Mattull inflicted the physical injuries on Bartolini. Their actions were spontaneous, unforeseeable, and independent criminal acts. Attributing eighty percent (80%) of a $350,000.00 damage award to the Pub for failing to maintain security in the parking lot is against the weight of the evidence and indicates that the jury was motivated by prejudice and improper considerations. We infer from the record that the jury was attempting to punish the Pub for frequently serving alcoholic beverages to minors." *Paragon Family Restaurant v. Bartolini*, 769 N.E.2d 609, 621–22 (Ind.App.2002).