**CENTERFIELD BAR, INC. d/b/a Centerfield Bar, Appellant–Defendant,**

v.

**Michael GEE and Autumn Gee, Appellees–Plaintiffs.**

No. 05A02–0911–CV–1070.

Court of Appeals of Indiana.

July 21, 2010.

Chris M. Teagle, Muncie, IN, Attorney for Appellant.

Jeremy S. Baber, Carmel, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Centerfield Bar, Inc. d/b/a Centerfield Bar ("Centerfield") appeals the trial court's ruling denying in part its motion for summary judgment regarding a complaint filed by Michael Gee and Autumn Gee. Centerfield raises one issue, which we revise and restate as whether the trial court erred when it denied in part Centerfield's motion for summary judgment. We affirm.

The facts most favorable to the non-moving party follow. On June 23, 2007, Michael and Autumn Gee were at Centerfield "playing pool" with a man named Jayson Speece, whom they had just met. Appellant's Appendix at 90. Autumn was by the pool table and dancing to music when Speece "made a shot and missed it." *Id.* at 41. Speece stated: "If she hadn't been shaking her f'n ass, I'd have made that shot." *Id.* Michael then turned around and looked directly at Speece and said "[d]on't disrespect my old lady." *Id.* at 42. Speece then stated again: "Well, if she hadn't been shaking her ass, I'd have

made that shot." *Id.* at 41. Speece ran towards Michael and Autumn "with a closed fist," and Autumn "stepped out of the way." Appellant's Appendix at 87. Speece then swung at Michael but missed as Michael moved to dodge Speece's punch, and Michael hit Speece. Michael and Speece began "hitting each other," and Geriann Howard, the bartender and sole employee at Centerfield at the time of the altercation, "immediately call[ed] 911." *Id.* at 43, 87. Speece stabbed Michael with a knife at least seventeen times and left the bar. Michael was air lifted to Methodist Hospital in Indianapolis for surgery.

On September 21, 2007, the Gees filed a complaint for damages and request for jury trial against Centerfield alleging that Centerfield's negligence in failing to remove or control Speece resulted in Michael's injuries. The Gees further alleged that Centerfield "had served alcohol to [Speece] to the point that he had become intoxicated at the time of the assault on [Michael]" and that Centerfield "is an establishment with a history of patrons who act in a hostile and disorderly manner." *Id.* at 19. On October 5, 2007, a response was filed by Judy Booher, *pro se,* on behalf of Centerfield. On November 27, 2007, Centerfield filed an answer denying the material allegations in the Gees' complaint.

On May 14, 2009, Centerfield filed a motion for summary judgment, designation of materials, and memorandum in support of its motion. In its memorandum, Centerfield argued that it was entitled to summary judgment with respect to the Gees' "dram shop claim" that it "continued to serve [Speece] after he had become intoxicated" because "there is absolutely no evidence to support that claim whatsoever . . . ." *Id.* at 51–52, 54. Centerfield also argued that it was entitled to summary judgment with respect to the Gees' "premises liability claim" because "[Michael] is

the one who threw the first punch" and because "a patron who initiates a fight [cannot] sue the tavern for injuries alleged to have been sustained in the fight." *Id.* at 52, 56.

On June 1, 2009, the Gees filed a brief in response to Centerfield's summary judgment motion. In their response brief, the Gees "concede that there appears to be no evidence to support their allegation that Centerfield served alcohol to [Speece] to the point that he had become intoxicated, thus summary judgment may be appropriate with regard to the [Gees'] dram shop claim." *Id.* at 61–62. The response brief also argued that "[a] genuine issue of material fact exists with regard to the foreseeability of this incident and as such, Centerfield is not entitled to Summary Judgment." *Id.* at 63.

After conducting a hearing, the trial court entered findings of fact and conclusions of law and order partially granting summary judgment on September 9, 2009 in favor of Centerfield "with respect to [the Gees'] dram shop claims" and ordered that Centerfield's "Motion for Summary Judgment is partially denied and that [the Gees'] claims on the issue of premises liability may proceed forward to final resolution." *Id.* at 9. Specifically, the trial court concluded that "[t]here is a question for the trier of fact as to whether or not this incident was reasonably foreseeable to Centerfield" and that "the trier of fact should be allowed to consider whether or not it is reasonably foreseeable to Centerfield that a bar patron could be injured by a fight around the pool table given the several prior police calls for fights inside the bar involving the pool table." *Id.* at 7–8. The court also concluded that the Gees' complaint "involves two claims, i.e. a dram shop claim as well as a premises liability claim" and that the Gees "concede that they have no evidence to support their

dram shop claim." *Id.* at 8. The trial court certified its ruling for appeal pursuant to Ind. Trial Rule 56(C).

The sole issue is whether the trial court erred when it denied in part Centerfield's motion for summary judgment.[1] When reviewing a denial of a motion for summary judgment, our standard of review is well-settled and is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind.2009). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 39 (Ind.2002). All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Kovach v. Midwest,* 913 N.E.2d 193, 197 (Ind. 2009), *reh'g denied.*

■ Summary judgment is rarely appropriate in negligence actions. *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person-one best applied by a jury after hearing all of the evidence." *Id.*

■ To prevail on a claim of negligence the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and

(3) compensable injury proximately caused by defendant's breach of duty. *Ford Motor Co. v. Rushford,* 868 N.E.2d 806, 810 (Ind.2007); *King v. Ne. Sec., Inc.,* 790 N.E.2d 474, 484 (Ind.2003), *reh'g denied.* Absent a duty there can be no negligence or liability based upon the breach. *Peters v. Forster,* 804 N.E.2d 736, 738 (Ind.2004).

Centerfield argues that it "is clearly entitled to Summary Judgment as to the premises liability claim of Michael and Autumn." Appellant's Brief at 8. Centerfield states that "there are conflicting statements by [Howard] as to whether Michael or [Speece] threw the first punch," but that "the evidence is undisputed that there were merely thirty (30) seconds from the exchange of words till [sic] the first punch was thrown." *Id.* at 9. Centerfield further argues that "it is undisputed that [Howard] had no indication that [Speece] was going to cause any problem" and that Howard "firmly stated that there was nothing that could have been done by Centerfield ... to prevent the fight." *Id.* at 9–10.

The Gees argue that "a genuine issue of material fact exists with regard to the foreseeability of this incident" and that "[a] trier of fact should be allowed to resolve this issue of material fact, and determine whether Centerfield breached its duty of reasonable care to protect its invitees from foreseeable criminal attacks." Appellee's Brief at 9. The Gees argue that Howard was "the only Centerfield employee working at the time of the attack," that Howard "had to call police at least five times for fights around the pool table," that Howard recalled "guys fight-

---

**1.** As previously mentioned, the Gees conceded before the trial court that there was no evidence to support the allegation in their complaint for damages that Centerfield served alcohol to Speece to the point that he had become intoxicated. On appeal, neither party challenges that portion of the trial court's ruling which grants summary judgment in favor of Centerfield with respect to the Gees' allegation that Centerfield served alcohol to Speece to the point that he had become intoxicated or any dram shop claim.

ing over pool or ... women," and that "a jury could infer that it was reasonably foreseeable to Centerfield that a bar patron could be injured by a fight around the pool table...." *Id.*

Initially, we note that in its motion for summary judgment it appears that Centerfield argued that it did not owe a duty to the Gees in stating that the Indiana Supreme Court, in *Ellis v. Luxbury Hotels, Inc.,* 716 N.E.2d 359 (Ind.1999), has "agreed that there was no duty owed...." Appellant's Appendix at 55. On appeal, Centerfield focuses its argument on whether the incident involving Michael Gee and Speece was foreseeable, argues that Centerfield "as a tavern owner does not have a duty to protect patrons from the unforeseeable criminal acts of other patrons," and argues that "Michael and Autumn have not sustained their burden to show a breach of duty by Centerfield as any duty is contingent upon the foreseeability of the criminal act of [Speece]." Appellant's Brief at 8, 10. We will attempt to address Centerfield's arguments as they may relate to both the duty and breach of duty elements of the Gees' negligence claim.

The Indiana Supreme Court has declared that "[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Kroger Co. v. Plonski,* 930 N.E.2d 1, 7 (Ind.2010) (citing *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1052 (Ind.2003)), *not yet certified; see also N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003) (noting that "[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct") (citation omitted). The Court in *Kroger* stated that "although this duty has been variously stated, ...

whether a duty exists is now well-settled in that it has long been declared or otherwise articulated by this State's case authority." *Kroger Co.,* 930 N.E.2d at 7 (internal quotation marks omitted).

The Court in *Kroger* explained that "[t]he more challenging inquiry is whether in a given case, involving business owners and their invitees, a particular element of duty has been met.... because the duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor.'" *Id.* at 7 (citing *Bartolini,* 799 N.E.2d at 1052). The Court in *Kroger* stated:

Although reasonable foreseeability is ordinarily a question of fact for the jury to decide, *see Humphery v. Duke Energy Ind., Inc.,* 916 N.E.2d 287, 295 (Ind.Ct. App.2009), in the context of duty—which is a question of law—*see Estate of Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind. 2003), reasonable foreseeability is determined by the court. It is in this context that the court considers the "totality of the circumstances." *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 972–73 (Ind. 1999); *Vernon v. Kroger Co.,* 712 N.E.2d 976, 979 (1999); *L.W. v. W. Golf Ass'n.,* 712 N.E.2d 983, 984–85 (Ind.1999). More precisely, the court must examine "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents to determine whether a criminal act was foreseeable." *Delta Tau Delta,* 712 N.E.2d at 972. We emphasize that this examination is not an inquiry into whether or to what extent a landowner owes a duty to a business invitee. That issue is settled: "Landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Bartolini,* 799 N.E.2d at 1052.

*Id.* at 7. The Court concluded that our inquiry is focused on whether a discrete element of the duty has been satisfied. *Id.*

■ Here, Centerfield as the party moving for summary judgment has the burden of demonstrating that the altercation between Michael Gee and Speece was not foreseeable. *Id.* at 9. The designated evidence shows that when Howard, the bartender working on June 23, 2007, was asked during her deposition whether "there [was] anything ... that [Centerfield] could've done differently, that might've prevented this incident between Michael and [Speece]," Howard testified that she "honestly [did not] think that there could've been a thing done" because "it was just so fast and so quick...." Appellant's Appendix at 46, 102. Howard further testified during her deposition that "[t]hirty seconds" passed "[f]rom the time [she] heard [Michael] say something to [Speece] initially about [Speece's] comment ... until the point that they were fully ... engaged in a fight...." *Id.* at 42–43, 98–99. Howard testified that prior to the incident Speece had "been polite" and "hadn't done anything to cause [Howard] to think he was going to cause a disturbance." *Id.* at 47, 103.

However, Howard also testified during her deposition that her experience at Centerfield was that "the pool table starts a lot of fights" and, when asked if anything could have prevented this incident, testified: "Stay away from pool tables. Pool table causes a lot of trouble." *Id.* at 44–45, 100–101. Howard, who began her employment with Centerfield in about August of 2003, testified that she recalled approximately five fights "around a pool table, prior to June of 2007" and that she called the police every time there was an incident. *Id.* at 45, 101. Howard testified that the fights that she recalled "were guys fighting over pool, or guys fighting over women." *Id.* at 39, 95. When asked if she had "the belief that another employee for security or safety purposes may assist [her] in protecting patrons," Howard testified: "Well, you know, yeah, it could've. I ... can't say no to that, because ... and I can't ... and yes, the answer could be, yes." *Id.* at 47, 103.

Howard testified that Centerfield did not employ any servers, bus boys, bouncers, or security personnel. Howard testified that her training at Centerfield included "what to do in an emergency," and specifically that if she had a problem, to "dial 911 immediately" or to call the manager/owner. *Id.* at 38, 94. In one of its answers to the Gees' first set of interrogatories, which was designated as evidence by the Gees, Centerfield stated:

> Our bartenders are women. They are not expected to physically control anyone. They are told to be observant and if an argument occurs, order those involved to leave. If the individuals persist in their conduct, they are to call 911. If a fight occurs, they are to dial 911 immediately.

*Id.* at 80.

Howard also testified during her deposition that Centerfield had a "barred list," which listed the names of persons that were banned from the bar for various reasons, and that "there might have been between fifteen to twenty" names on the barred list in June of 2007. *Id.* at 39–40, 95–96.

Based upon the facts set forth in the materials designated as evidence, we cannot conclude that Centerfield has demonstrated that the assault by Speece against Michael Gee occurring on its business premises was not foreseeable as a matter of law. We emphasize that the fact that there were previous "fights" as described by Howard in her deposition or the fact that there was a "barred list" of persons

not permitted into the bar do not necessarily support the view that the altercation between Speece and Michael on Centerfield's premises was foreseeable. However, we reiterate that Centerfield as the moving party, and not the Gees, had the burden of demonstrating that the altercation or assault could not have been anticipated. *See Kroger*, 930 N.E.2d at 9. As previously stated, summary judgment is rarely appropriate in negligence actions, *see Rhodes*, 805 N.E.2d at 387, and we cannot say that the designated materials demonstrate that the assault on Michael Gee was not foreseeable as a matter of law. *See Kroger Co.*, 930 N.E.2d at 8 (holding that the materials designated by the appellant/store in support of its summary judgment motion did not demonstrate that an assault against the appellant/store's patron occurring on its premises was not foreseeable as a matter of law). Thus, Centerfield is not entitled to summary judgment on this issue.

■■■■ To the extent that Centerfield argues that, even if it owed a duty to the Gees, it did not breach that duty, we observe that although the existence of duty is generally a matter of law for the court to decide, a breach of duty, which requires a reasonable relationship between the duty imposed and the act alleged to have constituted the breach, is usually a matter left to the trier of fact. *Kroger Co.*, 930 N.E.2d at 9 (citing *Mangold ex rel. Mangold v. Ind. Dept. of Natural Res.*, 756 N.E.2d 970, 975 (Ind.2001)). Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred. *Id.* While the assault in this case may have occurred relatively quickly, after reviewing the designated evidence we conclude that whether Centerfield should have done more to protect its business invitees from foreseeable criminal activity, including providing adequate security personnel during the night hours, is a matter for the finder of fact to determine. *See Kroger Co.*, 930 N.E.2d at 10 (noting that "it is left to the fact finder to determine whether Kroger should have done more to protect its business invitees from foreseeable criminal activity, including providing adequate security personnel"); *see also Winchell v. Guy*, 857 N.E.2d 1024, 1029–1030 (Ind.Ct.App.2006) (holding that the designated evidence raised questions of fact for the jury, namely whether a restaurant satisfied its duty of reasonable care to prevent the reasonably foreseeable criminal actions of another, and that a single inference could not be drawn from the facts so as to render the question of breach a question of law). Accordingly, Centerfield was not entitled to judgment as a matter of law.

For the foregoing reasons, we affirm the trial court's ruling denying in part Centerfield's motion for summary judgment.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.