VAIDIK, Judge,
concurring in part, dissenting in part.
Based on the designated evidence, I agree with the majority’s decision to affirm summary judgment in favor of Phi Psi National, but I respectfully dissent from the majority’s decision that Yost failed to establish a genuine issue of material fact regarding whether Wabash and Phi Psi owed him a duty of care under the circumstances. I find that there is an issue of fact concerning whether the events of that night constituted criminal hazing and whether they were reasonably foreseeable to Wabash. I also find that there is an issue of fact over whether Phi Psi assumed a duty of care toward Yost. I therefore believe that the trial court erred by grant *746 ing summary judgment in favor of both Wabash and Phi Psi.
As my colleagues note, Yost argues that Wabash owed him a duty of care under the theory of premises liability since Wabash was the owner and landlord of the Phi Psi fraternity house and “[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks, i.e., hazing.” Op. p. 731 (citing Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1052 (Ind.2003)). However, the majority holds that as a matter of law Yost’s showering was not hazing and therefore not criminal. Id. at 734-35. Unlike my colleagues, I find that there is a question of fact as to whether the actions involved in this case were hazing.
Yost stated that he wanted to demonstrate his “ferocity” to the other Phi Psis, so he resisted by “kicking and screaming.” Appellant’s App. p. 222, 513. Despite his resistance, the Phi Psis involved still tried to shower him, stopping only when Cravens rendered him unconscious. This act did not take place within a vacuum. Rather, it took place in an atmosphere where “creeking” and “showering” were explicitly outlined in the Phi Psi pledge handbook. Id. at 517. It also took place while Yost, an incoming freshman and soon-to-be formal pledge, was living in the Phi Psi fraternity house. The house was owned by the school and provided student housing for the incoming freshman. Yost, Wabash, and Phi Psi all knew Yost’s living circumstances; if Yost did not follow through with pledging Phi Psi, he would have had to discuss his reasons for leaving with the Associate Dean of the school and find a new living arrangement just months into his freshman year. Id. at 472. These designated facts create a genuine issue of material fact as to whether Yost’s showering was a condition of his membership in Phi Psi and a condition for continuing residency at the house.[16] As such, this is a jury decision and not ours.
In addition to presenting a question about its status as hazing, I also find that the designated evidence supports the conclusion that any hazing of Yost or other fraternity pledges was reasonably foreseeable by Wabash. Since the early 2000s, there have been fifteen reported instances of hazing that Wabash was aware of and took action on, two of which resulted in the death of students, and three others which directly involved the Phi Psi house.[17] Id. at 458-64. This is sufficient evidence to create the reasonable inference that the hazing was foreseeable in Wabash’s fraternity houses.
Additionally, while Wabash did sanction the fraternities involved in some of these hazing instances, other times the college leadership did not take specific disciplinary action, they just “worked very closely with rising house leadership each year to try to prevent similar occurrences.” Id. Instead of taking a hard line against hazing, a reasonable inference from the designated evidence is that Wabash even encouraged such behavior by doing such things as failing to recognize hazing as hazing, promoting drinking during class and drinking with campus security, and failing to enforce the Gentleman’s Rule.[18] Id. at 228- *747 30, 244-46, 264. This also suggests that Wabash has a pattern of turning a blind eye to hazing on its campus, thereby breaching its duty as a landowner to Yost.[19] The facts presented therefore create genuine issues of fact both as to whether Yost’s injury was the result of hazing and whether Wabash breached the duty it owed to Yost, again making this a jury question.
I also respectfully disagree with the majority’s decision that summary judgment in favor of Phi Psi was appropriate; I find that there is a genuine issue of fact as to whether Phi Psi assumed a duty of care toward Yost. The Phi Psi manual explicitly states that “Phi Kappa Psi became the first national social fraternity to create a department to oversee and improve this portion of fraternity life,” in reference to the pledging process and the problems it historically had. Id. at 648 (emphasis added). The manual goes on to say, “At the very least, the chapter is responsible for safeguarding the health, safety and well-being of its pledges.” Id. at 651. Further, “creekings” and “showerings” are outlined in the pledge manual as “Indiana Gamma Traditions,” indicating that they are events sanctioned by the chapter. Id. at 517.
Because Phi Psi has sanctioned these events and has explicitly stated that it oversees pledging, there is evidence supporting the inference that Phi Psi has assumed a duty toward Yost in this instance. The majority says this is not the case because Yost’s showering was not conducted in the manner that is outlined in the pledge manual, specifically this was not a “planned, celebratory event[ ] involving all or most of the fraternity brothers.” Op. p. 734. This statement punctuates the difference between the majority’s view and mine. In my opinion, the majority’s view of pledging and consequently hazing is far too restrictive. Hazing need only be conduct which requires a person to perform an act as a condition of association with the group. To be sure, evidence of the number of active brothers involved in the conduct and the similarity of the conduct with the formal requirements set forth in the pledge book is evidence to be considered in deciding whether a hazing occurred; but, thesé are only two of the many factors that must be considered. In my view, the fact that showering was conduct outlined in the pledge manual, Phi Psi oversees the pledging process, and there is a material question as to whether hazing occurred creates a genuine issue of material fact as to whether Phi Psi assumed a duty to Yost. Therefore, I would reverse the trial court’s decision to grant summary judgment in favor of Phi Psi.
All said, I believe that the designated facts could reasonably lead a trier of fact to conclude that hazing occurred here— hazing that both Phi Psi and Wabash had a duty to stop yet ignored. Because of this, I believe that this is a jury’s call and not ours.

. At least one fraternity brother seemed to think so. Jessie McCarley testified that if a member resisted a showering and the brothers continued to shower him, that would constitute hazing. Appellant’s App. p. 537.

. We recognize that the two student deaths occurred after the incident involved in this case. However, those deaths further support a showing of a culture of hazing that is present on Wabash's campus.

.The Gentleman's Rule is Wabash’s rule for student behavior and states: “The student is expected to conduct himself at all times, both *747 on and off the campus, as a gentleman and a responsible citizen.” Appellant’s App. p. 466-68.

. Turning a blind eye to this behavior is no different than "a wink and a nod” that unofficially sanctions those actions. See A Few Good Men (Columbia Pictures 1992).