**Mae Belle LANE, Appellant–Plaintiff,**

v.

**ST. JOSEPH'S REGIONAL MEDICAL CENTER, Appellee–Defendant.**

**No. 71A05–0310–CV–525.**

Court of Appeals of Indiana.

Nov. 9, 2004.

Frederick B. Ettl, South Bend, IN, Attorney for Appellant.

Robert J. Palmer, Brad Varner, South Bend, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Mae Belle Lane appeals from the trial court's grant of summary judgment in favor of St. Joseph's Regional Medical Center ("the Center"). She presents several issues for our review, one of which we address:[1] whether a genuine issue of material fact exists in regard to whether an attack upon Lane was reasonably foreseeable.[2]

We affirm.

On February 28, 2002, Lane was ·a patient at the Center's Emergency Room. While she sat in the waiting room, a teenage boy, D.G., arrived with his mother. After they had all sat in the waiting room for a short period of time, D.G. walked up to Lane and began to hit her on her right arm and shoulder. Lane's son-in-law, who had accompanied her to the emergency room, jumped to her aid and struck D.G., knocking him to the floor. The attack stopped and nothing further happened. Lane suffered some injuries as a result of the attack.

Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ham-mock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. *Id.* If the moving party meets these requirements, the burden then shifts to the nonmovant to establish genuine issues of material fact for trial. *Id.*

In considering an appeal from the grant or denial of summary judgment, we are bound by the same standard as the trial court. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.* Because issues of contributory negligence, causation, and reasonable care are more appropriately left for determination by the trier of fact, summary judgment is rarely appropriate in negligence cases. *Id.*

To recover under the tort of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant owed to the plaintiff, (2) a breach of

---

1. Lane presented one issue to the trial court in opposing the summary judgment, whether a genuine issue of material fact existed with regard to whether the attack was reasonably foreseeable so that a duty was owed to protect Lane from the attack. Upon appeal, Lane has presented several issues for our review which were not presented to the trial court as grounds which precluded summary judgment, including whether the hospital implemented adequate security measures and whether they were followed. To the extent that new issues are presented, we do not address them. *See* *Ross v. State*, 704 N.E.2d 141, 144 (Ind.Ct.App.1998) (stating that issues not presented to the trial court cannot be raised upon appeal). To the extent that the separate issues are actually part and parcel of the foreseeability issue, they will be addressed.

2. Lane presents the issue in terms of duty. The Center, in turn, couches its argument in both terms of duty and proximate cause. We address both in this decision.

that duty, and (3) an injury to the plaintiff proximately caused by the breach. *Id.*

Much of the argument presented to the trial court during the summary judgment proceedings focused upon whether the Center owed a duty to Lane to protect her from the criminal acts of a third party. Specifically, the parties focused upon whether the actions of D.G. were foreseeable, so that a duty arose on the part of the Center. The trial court concluded that the criminal actions of D.G. were not foreseeable, and thus, the Center owed no duty to Lane to protect her from D.G.

Since the time that the trial court granted summary judgment, our Supreme Court addressed the question of under what circumstances a business owes a duty to an invitee to protect her from the criminal acts of a third person. In *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048 (Ind.2003), the Court noted that landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks. *Id.* at 1052 (citing *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 973 (Ind.1999)). The Court also observed that the duty of a business to exercise reasonable care extends to keeping its parking lots safe and providing a safe and suitable means of ingress and egress. *Id.* (citing *Vernon v. Kroger Co.,* 712 N.E.2d 976, 979 (Ind. 1999)).

 As acknowledged in *Bartolini,* our Supreme Court concluded in *Northern Indiana Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003), that an individualized judicial determination of whether a duty exists in a particular case is not necessary where such a duty is well-settled. 799 N.E.2d at 1052. "Thus, there is usually no need to redetermine what duty a business owner owes to its invitees because the law clearly recognizes that '[p]roprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises, including providing adequate staff to police and control disorderly conduct.'" *Id.* (quoting *Muex v. Hindel Bowling Lanes, Inc.,* 596 N.E.2d 263, 266 (Ind.Ct.App.1992)). However, as noted by the Court in *Bartolini,* "[t]his duty only extends to harm from the conduct of third persons that, under the facts of a particular case, is reasonably foreseeable to the proprietor." *Id.*

The facts in *Bartolini* established that Bartolini was attacked and beaten in the parking lot owned by the Paragon Family Restaurant, d/b/a Round the Corner Pub ("the Pub"). On the night in which the attack occurred, Bartolini was a customer of the Pub and was in the company of a female friend. At approximately 1:00 a.m., Jeffrey Todd and John Mattull arrived at the Pub. Mattull was twenty-one years old, but Todd was under twenty-one. Nonetheless, their identification was not checked and they were served alcohol. Both Todd and Mattull appeared loud and obnoxious to another bar patron, and they yelled several times. Todd and Bartolini "had words" while in the Pub. *Id.* at 1052. At closing time, Bartolini left the bar and was walking his companion to her car when Todd and Mattull exited the bar. Either Todd or Mattull knocked over a stop sign which was in a tire or bucket of cement, and Todd then threw a bottle in the air which burst on the concrete. Todd and Mattull began verbally assaulting Bartolini, and the waitress notified the bartender and night manager of the disturbance. The verbal altercation became physical and Todd threatened to kill Bartolini. Mattull then lunged at Bartolini who fell to the ground, striking his head. Both Todd and Mattull continued to viciously attack Bartolini. The bouncer, who had watched the altercation escalate for

five to six minutes along with other Pub employees, finally pulled Mattull away from Bartolini, but Todd continued to attack him. Bartolini suffered serious injuries as a result of the attack.

In analyzing the law and facts before it, our Supreme Court noted three cases it had decided four years prior to the *Bartolini* case, *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983 (Ind.1999); *Vernon*, 712 N.E.2d at 979; and *Delta Tau Delta*, 712 N.E.2d at 973. In those cases, the Court held that "the determination of whether a landowner owed an invitee a duty to take reasonable care to protect the invitee against a third party criminal attack requires consideration of the totality of the circumstances to determine whether the criminal act was reasonably foreseeable." *Bartolini*, 799 N.E.2d at 1052. In *Bartolini*, the Court acknowledged the procedural inconsistency between the rule enunciated in *Sharp*, i.e. that no individualized determination of duty is necessary where such a duty is already well-settled, and individualized determination of reasonable foreseeability found to be necessary under the trilogy of *Western Golf, Vernon,* and *Delta Tau Delta. Id.* at 1053. The Court concluded that *Sharp* established the better procedure and was to be followed. Nonetheless, our Supreme Court stated, "There is no doubt, however, that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability." *Id.* The Court then concluded its analysis by stating that "[w]here, as in this case, the alleged duty is well-established, there is no need for a new judicial redetermination of duty.... In the present case, the well-settled duty was sufficiently established merely by evidence that Bartolini, a customer of the Pub, was beaten in the Pub parking lot as he was leaving." *Id.*

While the Court held that the existence of a duty was well-settled, neither its analysis nor the decision shed much light upon how that determination was made. In establishing that landowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks, the *Bartolini* Court cited to *Delta Tau Delta* and extended that duty to parking areas by citing to *Vernon.* 799 N.E.2d at 1052. The Court also cited to *Western Golf* and *Muex* in discussing the reasonable foreseeability requirement for the existence of the duty in protecting individuals from criminal attacks. *Id.* at 1052–53. Thus, of the four cases relied upon by the Court in its discussion of duty, three found the existence of the duty following an individual redetermination based upon the totality of the circumstances to find that the criminal act was reasonably foreseeable. Furthermore, in *Delta Tau Delta,* the Court stated that the issue was "whether a landowner may have a duty to take reasonable care to protect an invitee from the criminal acts of a third party.[4] This issue is one that we have not addressed recently and one which has resulted in some disagreement in the Court of Appeals." 712 N.E.2d at 971. Footnote 4, contained within the above quote, reads:

"In this case, Johnson was invited to the party by a member of DTD, and the sexual assault occurred in DTD's house. Thus, she is an invitee, and DTD, as the landowner, owed her a duty to exercise reasonable care for her protection. Having already determined in *Burrell v. Meads,* 569 N.E.2d 637 (Ind.1991) that such a duty exists, we need not formally use the three factor balancing test as enunciated in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991) (holding that whether a duty exists is determined by balancing three factors: the relationship between the parties, the foreseeability of

the occurrence, and public policy concerns). The issue in this case is when, if ever, does that duty extend to criminal acts by third parties. Looked at under the *Webb* framework, our holding in *Burrell* implicitly determined that two of the three factors, relationship and public policy, weighed in favor of establishing a duty between a social host and his invited guest. The only issue remaining in this case is foreseeability." *Id.*

In spite of these considerations, the *Bartolini* Court concluded that the existence of the duty to protect invitees from the criminal acts of third parties was well-established.

Further uncertainty arises in the consideration of reasonable foreseeability as an element of duty. Even though the Court claimed that reasonable foreseeability was an element of the duty, it is unclear how reasonable foreseeability was considered in the duty analysis. The correct application of the foreseeability element is an issue which has plagued this court since the announcement of the three factor test in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind. 1991).[3]

In *Goldsberry v. Grubbs,* 672 N.E.2d 475 (Ind.Ct.App.1996), *trans. denied,* this court discussed the inconsistent application of the three factor test announced in *Webb.* It concluded that the source of the inconsistent application of the *Webb* test is the failure to distinguish between the foreseeability component of the duty analysis and the foreseeability component of proximate cause. 672 N.E.2d at 478–79. The *Golds-*

*berry* court concluded that in the context of proximate cause, foreseeability involves evaluating the particular circumstances of an incident after the incident occurs. *Id.* at 479. In other words, proximate cause foreseeability is determined based upon hindsight and accounts for the circumstances that actually occurred. *Id.* The foreseeability component of the duty analysis requires a lesser inquiry. *Id.*

The complexity of this issue was brought to light once again in this court's decision in *Hammock, supra.* In that case, we concluded that a driver of an automobile was not liable to Red Gold for loss of tomato products which were spoiled as a result of the loss of power following an automobile accident approximately two and one-half miles from the Red Gold plant. We noted that we "found ourselves unable to avoid walking a torturous path in attempting to resolve" the issues presented in the appeal, namely, the application of the foreseeability element of duty and proximate cause. 784 N.E.2d at 505 n. 15. Recognizing that we were quite possibly transgressing upon the *Goldsberry* duty analysis, but given the uniqueness of the situation before us, we looked to some facts related to the specific accident and subsequent harm and concluded that the driver did not owe a duty to Red Gold because Red Gold was outside of the zone of danger. *Id.* at 501 n. 10, 506. In reaching that result, we concluded that the harm suffered by Red Gold was not foreseeable. *Id.* at 503.[4]

---

**3.** The test announced in *Webb* required that when considering whether a duty existed, the court should balance (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. 575 N.E.2d at 995. However, as announced in *Sharp,* that test is to be used only in those instances where the

element of duty has not already been declared or articulated. 790 N.E.2d at 465.

**4.** The dilemma which this court has faced with the foreseeability issue has not explicitly been resolved by our Supreme Court. However, some light was shed upon that question by our Supreme Court in *Estate of Heck ex rel. Heck v. Stoffer,* 786 N.E.2d 265 (Ind.2003),

As earlier noted, the *Bartolini* Court noted that reasonable foreseeability remained an element of the landowner or proprietor's duty of reasonable care, and also stated that the issue is merely at what point and in what manner to evaluate evidence regarding foreseeability. 799 N.E.2d at 1053. The Court concluded that the procedure used in *Sharp* provides the better answer upon how to resolve the issue, concluding that because the alleged duty is well-established, there was no need for a judicial redetermination of duty. The Court then stated, "In the present case, the well-settled duty was sufficiently established merely by evidence that Bartolini, a customer of the Pub, was beaten in the Pub parking lot as he was leaving." *Id.* It appears that the *Bartolini* Court considered some evidence of the crime to reach the conclusion that the duty to protect invitees from criminal acts was well-settled. This may be read to mean that reasonable foreseeability exists because the criminal attack occurred, but that result would hardly seem logical in that it would suggest that every criminal act which occurs would be foreseeable and all landowners and proprietors would automatically be subject to liability. In effect, proprietors would become insurers of their patrons' safety.

■ Our Supreme Court's decision in *Bartolini* may also be read to mean that the facts did not actually "establish" the duty but allowed for the application of the duty. By this, we mean that the duty to protect business invitees from criminal acts of third parties has always existed and business proprietors owe that duty to invi-

tees regardless of whether a criminal act has ever occurred. However, that conclusion should not be read so broadly to encompass all business proprietors. Rather, any conclusion that a duty is owed to protect patrons from criminal acts of third parties must include the consideration of whether the acts were foreseeable. Effectively, while one may expect that a criminal act would occur at a bar and that some precautions should be taken to protect patrons, one would not reasonably expect that a criminal attack would occur in a doctor's office. Thus, a doctor's office would not generally have the duty to maintain security measures to protect its patients. We believe it is this conclusion that our Supreme Court reached in *Bartolini*.

■ We recognize that our reading of *Bartolini* may not strictly follow the Supreme Court's conclusion that a duty was established merely by evidence that a bar patron was beaten in the bar parking lot. However, because foreseeability is a requirement to establish duty, even well-settled duties must be based in some part upon the facts of the situation at hand. In *Bartolini*, the important fact is that the beating took place in the parking lot of the *bar* where the victim and assailants had been served.

■ Turning now to the facts before us, we must decide whether a well-settled duty exists such that the hospital was required to maintain security for the protection of its patients, or whether we must look to the totality of the circumstances to determine whether a duty should exist.

---

*reh'g denied.* In that decision, the Court reviewed the specific facts of the case and declined to take a narrow view of *Webb's* foreseeability of harm prong in determining that a duty existed. *Id.* at 269. This calls into question this court's discussion of foreseeability in *Goldsberry,* but it does lend credibility to this

court's review of some specific facts in *Hammock* to determine whether a duty existed. Indeed, the decision in *Heck* could be read to imply that this court could have gone further in reviewing the specific facts in *Hammock* to determine whether a duty existed.

As noted earlier, it is not clear how our Supreme Court reached the conclusion that the existence of a duty was well-settled in *Bartolini*. However, as noted above, our reading of *Bartolini* leads to the conclusion that the existence of a duty is well-settled when one would expect that a criminal act of a third party is likely to occur upon the premises.

There can be little dispute that a hospital's emergency room can be the scene of violent and criminal behavior. Violent and intoxicated individuals, those involved in crimes, and people injured in domestic disputes are routinely brought to the emergency room for treatment. In some cases, the violence spills into the emergency room itself and measures must be taken to control the situation. This was recognized by the Center in the establishment of the duties of its security officers. The responsibilities of the security officer whose job was to patrol the entire emergency department included "monitor[ing] unruly or violent patients and restrain[ing], if necessary." Appendix at 46. Furthermore, the policy also states, "Due to the nature of the work in the Emergency Department of Saint Joseph's Medical Center, there is a higher potential for violence to occur than in other areas of the hospital. Because of this consideration the position of Emergency Room Officer (Unit 7) is designed to be staffed with sworn police officers." App. at 45. Given all of these considerations, we conclude that a duty to maintain protection for patients of an emergency room exists. Thus, the Center had the duty to implement and maintain reasonable measures to protect emergency room patients from criminal acts of third parties.[5] Consequently, the trial court's con-

clusion that no duty existed and that summary judgment was proper upon that ground is erroneous.

We thus turn our attention to the issue presented by the Center. Specifically, were the Center's actions or inactions the proximate cause of Lane's injury? Whether an act is the proximate cause of a plaintiff's injury depends upon whether the injury was a natural and probable consequence of the act in issue, which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind.Ct.App. 2001). The chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury. *Id.* The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. *Id.* The original negligent actor is relieved of any and all liability resulting from the original negligent act if the intervening cause was not reasonably foreseeable. *Id.* The issue of proximate cause is often determined by the trier of fact. *Id.* However, where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law. *Id.*

The foreseeability requirement for proximate cause imposes the same limitations upon liability as does the superced-

---

5. We purposefully do not state what specific security measures must be taken. What must be done will depend upon the circumstances specific to each business. Suffice it to say that measures need not go so far as to require

a security guard to stand watch over each person in the emergency room at all times. Rather, a plan needs to be implemented in which security procedures can be increased as the need arises.

ing or intervening cause doctrine. *Bartolini,* 799 N.E.2d at 1055. "The doctrine 'adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation.'" *Id.*

The Center relies upon two grounds to assert that it was not the proximate cause of Lane's injuries. The first is that D.G.'s actions were the superceding, intervening cause of the harm, thus breaking any chain of causation. The second is that the actions of D.G. were not foreseeable. However, as noted in the previous paragraph in our standard of review, the separate grounds which the Center argues are really one in the same. Thus, our review is confined to whether it was clear that the injury was not foreseeable under the circumstances because the actions of D.G. were not foreseeable.

The evidence which was designated to the trial court reveals that Lane testified in her deposition that she was "surprised" when D.G. began to hit her.[6] App. at 80. Her son-in-law testified that he too was surprised and that they did not know what set off the attack. Given that the designated evidence in this case depicts a situation in which the attack upon Lane by D.G. was unexpected and that no other evidence was designated to the trial court from which it could have concluded that the specific actions of D.G. on the day in question were foreseeable, we are bound to conclude that the attack and injury was not foreseeable, that the Center's actions were not the proximate cause of Lane's injuries, and that the Center is entitled to judgment as a matter of law.

Summary judgment in favor of the Center is affirmed.

MAY, J., concurs.

VAIDIK, J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in part and dissenting in part.

I concur that the Center owes a duty of care to Lane but disagree with the reasoning the majority uses to reach this conclusion. I, however, respectfully disagree that the acts of the Center as a matter of law were not the proximate cause of Lane's injuries.

As to the issue of duty, the analytical approach detailed in *NIPSCO v. Sharp,* 790 N.E.2d 462 (Ind.2003), controls; namely, there is no need for this court to determine whether a duty exists where the element of duty has already been declared or otherwise articulated by caselaw. *Id.* at 465. It is well-established that "[l]andowners have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1052 (Ind.2003). Therefore, the majority's lengthy analysis of the existence of the Center's duty is unnecessarily complex. The fact that I reach the same result as the majority—that the Center owes a duty to its patients to take reasonable precautions to protect them from foreseeable criminal attacks—illustrates a point made in a recent law review article authored by Justice Boehm: "[T]he result in a given case is usually unaffected by choice of methodology." Hon. Theodore R. Boehm, *A Tangled* Webb—*Reexamining the Role of Duty in Indiana Negligence Actions,* 37 Ind. L.Rev. 1, 19 (2004).

I respectfully dissent as to the majority's conclusion that summary judgment was appropriate on the grounds that there

---

**6.** Upon appeal, Lane attempted to supplement the record with pages from her deposition which were not designated to the trial court. Upon motion from the Center, this court struck the additional pages and they were not considered in our review.

was no proximate cause as a matter of law. I believe that there are genuine issues of material fact on the issue of proximate cause. The majority found that the actions of the Center were not the proximate cause of Lane's injuries because D.G.'s actions were the superceding, intervening cause of the harm and because D.G.'s actions were not foreseeable.

Proximate cause, at a minimum, requires that the injury would not have occurred but for the defendant's conduct. *Bartolini,* 799 N.E.2d at 1054. Additionally, the injury must be a natural and probable consequence, foreseeable under the circumstances before a proximate cause determination can be made. *Id.* As the majority states, the foreseeability requirement for proximate cause imposes the same limitations on liability as does the superceding or intervening cause doctrine. *See id.* at 1055. The doctrine adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation. *Id.* Generally, proximate cause is an issue of fact for the jury. *Orban v. Krull,* 805 N.E.2d 450, 454 (Ind.Ct.App.2004).

In this case, the designated evidence demonstrates that the Center was on notice of "a higher potential for violence to occur [in the Emergency Department] than in other areas of the hospital." Appellant's App. p. 45. The Emergency Department was designed to be staffed with a sworn police officer, but at times other members of the Center's security staff would help out. *Id.* The designated evidence also shows that the attack was stopped only by Lane's son-in-law, Appellee's Supp. App. p. 6, and that the assailant was taken away by a nurse after the attack. *Id.* at 7.

While evidence was presented that both Lane and her son-in-law were "surprised" by the attack, *id.* at 4, 9, this does not establish conclusively that the attack was foreseeable or that it was not. Many acts of violence happen suddenly, and many victims are undoubtedly surprised when they are victimized. Furthermore, it is conceivable that a trained security officer stationed in or near the emergency room would have been able to prevent the attack by picking up on warning signs of an imminent attack or an unstable individual, by springing to action more quickly than a lay bystander, or by deterring potential assailants. The fact that the victim in this case was surprised does not necessarily mean that the attack was unforeseeable to the Center. On the other hand, the fact that the assailant was stopped only by Lane's son-in-law, not a security officer from the Center, *see id.* at 6, does not necessarily mean that the attack was a natural and probable consequence of the failure of the Center to provide security in Lane's proximity. It may be that no security officer or system would have been able to prevent the attack on Lane. In any event, whether the Center's acts proximately caused Lane's injuries—that is, whether the injury was foreseeable under the circumstances—is a question of fact for the jury.

Therefore, I dissent from the majority's conclusion that summary judgment was appropriate.