Philip Wayne HASSAN, M.D.,
Appellant–Defendant,

v.

Norma M. BEGLEY, Individually and
as Personal Representative of the
Estate of Willie A. Begley,

and

Daclynn Scott Johnson, M.D., Kevin
Dean Slentz, M.D., and White County
Memorial Hospital, Appellees–Defendants.

No. 91A02–0501–CV–55.

Court of Appeals of Indiana.

Oct. 28, 2005.

Rehearing Denied Jan. 25, 2006.

James M. Portelli, Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellant.

Kathy A. Lee, Marie Troendle Greer, Cline Farrell Christie Lee & Caress, P.C., Indianapolis, for Appellee Norma Begley.

## OPINION

BAKER, Judge.

Appellant-defendant Philip Wayne Hassan, M.D. (Dr. Hassan), brings this interlocutory appeal challenging the denial of his motion for summary judgment regarding a medical malpractice claim that was brought against him by appellee-plaintiff Norma Begley, individually and as the personal representative of the estate of her deceased husband, Willie A. Begley.

In particular, Dr. Hassan alleges that the trial court erroneously denied his motion because the designated evidence established that his failure to place a nasogastric tube (NG tube) in Begley following his admission to the hospital emergency room did not proximately cause his death. Concluding that Begley has failed to submit designated evidence establishing that Dr. Hassan's conduct caused her husband's death, we reverse the judgment of the trial court and remand this cause with instructions that summary judgment be entered for Dr. Hassan.

### FACTS

At approximately 9:15 a.m. on August 28, 1996, sixty-seven-year-old Willie Begley went to the White County Memorial Hospital emergency room (the Hospital), complaining of severe abdominal pain. Begley informed the hospital staff that he had begun to experience the pain the day before, and it continued to worsen. Begley also indicated that he was vomiting at home, and that he had not had a bowel movement for four days. He informed the hospital staff that his medical history consisted of chronic obstructive pulmonary disease and diverticulitis. Upon Begley's arrival, the nurses observed that his abdomen was "distended." Appellant's App. p. 76, 86.

Dr. Hassan was the emergency room physician assigned to care for Begley. At the time, Dr. Hassan was the medical director for the Hospital's emergency medical department. Dr. Hassan examined Begley and also determined that his abdo-

men was distended and tender to palpation. Appellant's App. p. 56, 79. The most significant abdominal tenderness was noted in Begley's left lower quadrant. Dr. Hassan described Begley's condition when he was admitted to the hospital as "severe to critical." Appellant's App. p. 80. Dr. Hassan also observed that Begley's chest x-ray showed a distended colon that was interpreted by a radiologist to show a possible bowel obstruction. Hence, Dr. Hassan believed that the prudent course would be to admit Begley to the hospital with a surgical consult.

After Dr. Hassan notified Begley's family physician—Dr. Gutierrez—of the circumstances, it was recommended that Dr. Daclynn Johnson, a general surgeon, examine Begley. The designated evidence established that Dr. Johnson believed that he saw Begley in the emergency room at approximately 11:20 a.m. He also noted that Begley's abdomen was very distended, and there was tenderness in the right lower quadrant. As a result, Begley was admitted to the special care unit at the Hospital.

Approximately thirty minutes later, the nurses observed that Begley's vital signs were weakening, and very dark urine was draining from Begley's catheter bag. The nurses went on to describe Begley's abdomen as very firm and distended, and Begley continued to suffer from severe abdominal pain. As Begley became nauseated and the pain continued, Dr. Johnson ordered placement of an NG tube. The Hospital nurses were able to anchor the tube at approximately 2:00 p.m., yet it was later determined that it had not been correctly placed. Dr. Johnson returned to surgery and passed Begley's care on to his partner, Dr. Kevin Slentz. An expert retained by Dr. Hassan was of the opinion that the NG tube had not been properly fitted.

Begley's pain continued to intensify, and at 4:00 p.m., he temporarily lost consciousness. Moreover, the nurses were unable to obtain a blood pressure reading. When Begley's blood gases were monitored at 4:20 p.m., they were in the "critically severe" range. Appellant's App. p. 83. Between 4:00 p.m., and 4:30 p.m., Begley's eyes were unfocused and his response time was very slow. Approximately six minutes later, Begley began to lack coordination when turning his head toward his family members, and his response time continued to decrease. Then, at 5:00 p.m., Begley went into a pulmonary arrest, and he was intubated one minute later by one of Dr. Johnson's partners. Dr. Hassan noted that he responded to a "Code Blue" for Begley at 5:35 p.m. Dr. Gutierrez arrived and Dr. Hassan indicated that Begley was not in Dr. Gutierrez's care. At 6:12 p.m., Begley was pronounced dead.

As a result of the incident, Begley's wife filed a proposed complaint with the Department of Insurance for medical malpractice against Drs. Hassan, Johnson and Slentz. The complaint also asserted that the Hospital was negligent because the acts or omissions by its personnel were committed "while they were acting within the scope of their employment." Appellant's App. p. 6. A Medical Review Panel assigned to hear the case determined, in a unanimous opinion, that the evidence submitted did not support the conclusion that Dr. Hassan failed to meet the appropriate standard of care. The Panel also concluded that Dr. Hassan's conduct was not a factor in Begley's death. On December 18, 2003, Begley's wife filed a complaint in the trial court against all of the defendants, alleging that they were all negligent in their treatment of Begley and that their negligence resulted in his death. The allegation with respect to Dr. Hassan was that he was negligent in failing to order an NG tube "to decompress Mr. Begley." Appel-

lant's App. p. 7. The allegations with respect to the remaining physicians were that the NG tube was incorrectly placed on two occasions to the extent that it resulted in "further respiratory compromise." Appellant's App. p. 7.

Dr. Hassan filed a motion for summary judgment, arguing that the designated evidence uncontrovertibly demonstrated that he did not breach the standard of care and that his conduct did not proximately cause Begley's death. In essence, Dr. Hassan asserted that his decision not to order an NG tube for Begley did not amount to medical malpractice. In response, Begley's wife retained Dr. Arnold Swerdlow, who testified that the nurse had misplaced the NG tube and that the tube remained misplaced and coiled in Begley's esophagus until approximately 4:54 p.m. He also observed that the NG tube was misplaced a second time into the bronchus of Begley's lung. Dr. Swerdlow went on to testify that the misplacement of the NG tube from 2:00 p.m. onward essentially acted to deprive Begley of assisted oxygen causing him to become hypoxic and aspirate oxygen, thereby resulting in acidosis and death.

Additionally, Dr. Swerdlow acknowledged that in light of Begley's diverticulitis, an NG tube should have been placed while Begley was in the emergency room. Dr. Swerdlow testified that the failure to have an NG tube placed in the emergency room "indirectly" contributed to Begley's death. Appellant's App. p. 122. He was of the opinion that Dr. Hassan had breached the standard of care by not ordering placement of an NG tube while Begley was in the emergency room department.

Following a hearing, the trial court denied Dr. Hassan's motion for summary judgment on October 20, 2004. The trial court then certified its order denying the motion, and we accepted jurisdiction of this appeal on March 1, 2005.

## DISCUSSION AND DECISION

### I. Standard of Review

Motions for summary judgment are properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Worman Enters., Inc. v. Boone County Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). This is the same standard used by the trial court in deciding whether to grant or deny summary judgment. *Id.* In determining whether genuine issues of material fact exist, the court must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party. *Id.*

When reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). Specifically, we must determine whether there is a genuine issue of material fact requiring a trial and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rule 56(C), (H). A party seeking summary judgment must make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine

issue for trial. *Id.* On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.*

■ We also observe that medical malpractice claims are no different from other kinds of negligence actions regarding the elements that a plaintiff must prove. *Bader v. Johnson*, 732 N.E.2d 1212, 1216–17 (Ind.2000). Specifically, the plaintiff must prove a: (1) duty owed to plaintiff by defendant; (2) breach of the duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury that was proximately caused by defendant's breach of duty. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). If the plaintiff proves the elements of negligence, he is entitled to all damages naturally flowing from the healthcare provider's breach of duty. *Bader*, 732 N.E.2d at 1221.

■ While a rigorous definition remains elusive, proximate cause has been defined as "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Orville Milk Co. v. Beller*, 486 N.E.2d 555, 559 (Ind.Ct.App.1985). A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. *Ashcraft v. Northeast Sullivan County Sch. Corp.*, 706 N.E.2d 1101, 1105

(Ind.Ct.App.1999). Put another way, proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct. *R.R. Donnelley & Sons Co. v. N. Texas Steel Co., Inc.*, 752 N.E.2d 112, 140 (Ind.Ct.App.2001), *trans. denied.* Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law. *Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 273 (Ind.Ct.App.2004). Finally, when a medical review panel establishes a lack of causation by the physician, the burden shifts to the patient-plaintiff to produce expert testimony to rebut the opinion of the panel. *McGee v. Bonaventura*, 605 N.E.2d 792, 794 (Ind.Ct.App.1993).

## II. Dr. Hassan's Contentions

In urging that the trial court erred in denying his motion for summary judgment, Dr. Hassan contends that he was entitled to judgment as a matter of law because the designated evidence established that his alleged negligence "in failing to place an NG tube in the emergency department was not a proximate cause of Begley's death." Appellant's Br. p. 6. To be sure, Dr. Hassan maintains that his motion was properly supported with designated evidence, including the unanimous opinion of the medical review panel that his conduct was not a factor in Begley's death, and that his conduct was superseded by the negligence of the physicians and nurses who treated Begley when they misplaced the NG tube.

■ Our Supreme Court has recognized that a defendant's tortious conduct is a sufficiently direct cause of a plaintiff's injuries, and not too remote, if the conduct is a

substantial, significant or material cause that "in more than a slight or remote degree contributed to or helped to produce the injuries." *Huey v. Milligan*, 242 Ind. 93, 101–02, 175 N.E.2d 698, 702 (1961). Put another way, it is not necessary for a defendant's act or omission to be *the* proximate cause of the plaintiff's injury, so long as the conduct is *a* proximate cause of the injury. *See Ingersoll–Rand Corp. v. Scott*, 557 N.E.2d 679, 684 (Ind.Ct.App.1990), *trans. denied* (recognizing that acts of negligence need not be the sole proximate cause of an injury for liability to arise). By the same token, an "indirect" causal connection between negligence and the injury is insufficient to establish proximate cause. *See Huey*, 175 N.E.2d at 704.

■ In this case, Dr. Swerdlow stated in his affidavit that it was his opinion that multiple mismanagements and misplacements of the NG tube caused Begley significant cardio-pulmonary impairment that resulted in cardio-pulmonary arrest and, ultimately, death. Appellant's App. p. 59. When Dr. Swerdlow was specifically questioned at his deposition as to how Dr. Hassan's alleged failure to have the NG tube placed in the emergency room caused Begley's death, he responded "only indirectly in the fact that it had to be done later on by someone who put it in the wrong spot." Appellant's App. p. 122. Additionally, Dr. Swerdlow testified that an NG tube should have been placed in the emergency department because of Begley's diverticulitis. Dep. p. 33, 35, 37, 38. However, Begley did not die of diverticulitis, and the designated evidence does not establish that Dr. Hassan's failure to place the tube resulted in Begley's death. Dr. Swerdlow also believed that Begley died from the NG tube being twice misplaced by the nurses. Appellant's App. p. 117–21. It was Dr. Swerdlow's opinion that the misplacement of the NG tube from 2:00

p.m. onward essentially acted to deprive Begley of oxygen, thereby causing him to become hypoxic and die. And Dr. Swerdlow acknowledged that Dr. Hassan was not responsible for the nurses' alleged misplacement of the NG tube. Appellant's App. p. 116.

In our view, the uncontroverted facts borne out by the designated evidence establish a lack of causation of Begley's death on Dr. Hassan's part. To be sure, Dr. Swerdlow's testimony that Dr. Hassan's failure to place the tube in Begley was insufficient to establish proximate cause and rebut the unanimous panel opinion.

### III. Intervening and Superseding Cause

■ On a related note, this court has determined that a chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury. *Lane*, 817 N.E.2d at 273. The key to determining whether an intervening agency has broken the original chain of causation is to determine whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. *Id.* That is, if the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of any and all liability resulting from the original negligent act. *Id.*

■ In this case, the designated evidence shows that while Begley was in the emergency room, he exhibited no clinical deterioration, but he also exhibited no improvement. Appellant's App. p. 79. Begley was admitted to the special care unit of the Hospital in light of Dr. Hassan's belief that the prudent course was immediate hospital admission with a consultation with a surgeon. Appellant's App. p. 79. Under the circumstances where the NG tube was incorrectly inserted on two occasions,

there is no designated evidence establishing that Dr. Hassan should have foreseen such alleged negligence of the nurses. Thus, in the absence of that foreseeability, the nurses' alleged negligence supersedes any causation flowing from Dr. Hassan's failure to order or place the NG tube while Begley was in the emergency room. To illustrate, in *Straley v. Kimberly*, 687 N.E.2d 360 (Ind.Ct.App.1998), *trans. denied,* an excavation subcontractor struck a main gas line. Thereafter, the Indiana Gas Company (Gas Company) dispatched a repair crew to the site. Straley, a member of the repair crew, was injured when an unknown source ignited the gas. Straley then filed suit against the various contractors who had caused the gas leak. In the end, this court determined that it was not the conduct of the defendant contractors that proximately caused the explosion. Rather, it was the superseding conduct of the Gas Company in attempting to repair a major gas leak without turning off the gas. We specifically found that the Gas Company's conduct was unforeseeable. *Id.* at 363.

Like the circumstances in *Straley,* it was unforeseeable from Dr. Hassan's standpoint that trained and experienced nurses would misplace the NG tube on two occasions. Hence, such conduct supersedes any alleged negligence and causation flowing from Dr. Hassan's omission to place the NG tube in Begley.

■ That said, Begley advances yet another attempt to salvage the trial court's ruling by directing us to section 457 of the Restatement (Second) of Torts which provides:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional harm resulting from normal efforts of third persons rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

Under this section, where an individual negligently causes a bodily injury to the plaintiff, and thereafter the plaintiff seeks medical attention for that injury, the negligent party is responsible for any malpractice committed by the healthcare provider in treating the plaintiff. *See Whitaker v. Kruse,* 495 N.E.2d 223, 225–26 (Ind.Ct.App.1996). However, as we have already concluded, Dr. Hassan did not negligently cause any injury to Begley requiring further treatment. At the time Begley left the care of Dr. Hassan, he had suffered no injury that was caused by Dr. Hassan. Moreover, there is no evidence that Begley was treated by the nurses and other healthcare providers because of any negligence on Dr. Hassan's part or any injury that Dr. Hassan had inflicted. Rather, it was Begley's diverticulitis that required further treatment, and Begley was not admitted to the Hospital for further testing and treatment as a result of Dr. Hassan's alleged negligence. The designated evidence established that Begley's admission to the Hospital was to monitor and treat Begley's existing condition. As a result, section 457 of the Restatement is inapplicable, and the conduct of the physicians and nurses in misplacing the NG tube that led to Begley's death was the superseding intervening cause of Begley's death. For all of these reasons, we conclude that the trial court improperly denied Dr. Hassan's motion for summary judgment.

The judgment of the trial court is reversed, and this cause is remanded with instructions that summary judgment be entered for Dr. Hassan.

MATHIAS, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent. Not only is summary judgment rarely granted in negligence actions when the sole issue is proximate cause, but especially in a medical malpractice case based upon negligence, summary judgment is seldom an appropriate disposition. *Jones v. Minick*, 697 N.E.2d 496, 499 (Ind.Ct.App.1998); *Hoskins v. Sharp*, 629 N.E.2d 1271, 1277 (Ind. Ct.App.1994), *reh'g denied*. That is, the issue of proximate cause is generally a question for the jury. *State Street Duffy's, Inc. v. Loyd*, 623 N.E.2d 1099 (Ind.Ct.App. 1993). This is particularly true when the critical question for resolution is whether the defendant exercised the degree of care due under the factual circumstances. *Jones*, 697 N.E.2d at 499. Accordingly, summary judgment should not be used as an abbreviated trial. *Brunner v. Trustees of Purdue Univ.*, 702 N.E.2d 759, 760 (Ind. Ct.App.1998), *trans. denied*.

In the instant case, Dr. Hassan has asked us to hold, and the majority agreed, that, as a matter of law, his alleged conduct was not a proximate cause of Begley's death because his acts were too remote in time and superseded by the negligence of other health care providers. However, I cannot agree. It is well established that intervening acts by third parties do not break the chain of proximate causation between a defendant's acts and a plaintiff's injury unless the intervening acts are unforeseeable. *See Mansfield v. Shippers Dispatch, Inc.*, 399 N.E.2d 423, 425 (Ind. Ct.App.1980). Viewing the evidence in the light most favorable to Begley, I find that reasonable jurors could conclude that the chain of causation was intact and thus, that the negligent acts and omissions of Dr. Hassan contributed to the wrongful death of Begley.

As the majority correctly states, Begley is not required to prove that Dr. Hassan's

negligence was "the" proximate cause of his death but, viewed in the light most favorable to Begley, Dr. Hassan's care was "a" proximate cause of Begley's death. In this case, even though Dr. Hassan evaluated Begley's condition as severe to critical upon his admission to the emergency room at White County Hospital, Dr. Hassan failed to order a nasogastric tube. Furthermore, because of the serious nature of Begley's condition, it cannot be said that it was unforeseeable that Begley would require ongoing and monitored care. In a similar vein, it was not unforeseeable that Dr. Hassan's failure to timely place the nasogastric tube in compliance with the reasonable and accepted standards of medical care would become a proximate cause of Mr. Begley's death. Therefore, I conclude that Dr. Hassan's initial mismanagement of Begley's care combined with the alleged negligence of other health care providers are factual matters that could be characterized as "a" proximate cause.

Moreover, Dr. Swerdlow testified that Dr. Hassan's failure to place a nasogastric tube in Mr. Begley while Mr. Begley was in the emergency room, was a breach of the standard of care. The majority should be mindful that when two or more health care providers owe the same duty to a patient, and each contribute to a breach of that duty, they are jointly and severally liable for the patient's death pursuant to Indiana's Medical Malpractice Act.

Accordingly, I find that Begley has met his burden of a prima facie showing to the trial court, and the trial court thus correctly determined that the proximate cause in this case could not be decided as a matter of law and should be left to the province of the jury. I would affirm the trial court's decision.