**Bill COLBURN, Appellant–Plaintiff,**

v.

**KESSLER'S TEAM SPORTS,**
**Appellee–Defendant.**

No. 93A02–0511–EX–1118.

Court of Appeals of Indiana.

July 21, 2006.

Rehearing Denied Oct. 30, 2006.

Randal M. Klezmer, Klezmer & Associates, Indianapolis, IN, Attorney for Appellant.

Van A. Nation, Nation Schoening Moll, P.C., Fortville, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Bill Colburn appeals from the Worker's Compensation Board's dismissal of his Application for Adjustment of Claim ("Claim"). Colburn presents a single dispositive issue for our review, namely, whether the Board erred when it found that Colburn's Claim was untimely under Indiana Code Section 22–3–3–3.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 12, 2002, Colburn sustained an injury to his lower back during the course and scope of his employment with Kessler's Team Sports ("Kessler's"). Casualty Reciprocal ("Casualty"), Kessler's worker's compensation insurance carrier, "accepted the claim as compensable and provided [ ] Colburn with medical care[.]" Appellant's App. at 13. Because Colburn returned to work less than one week after his injury, he was not entitled to temporary total disability benefits ("TTD"). As such, he and Casualty did not enter into an agreement regarding compensation. But Casualty continued to pay for Colburn's medical expenses related to the accident.

On October 10, 2002, Colburn consulted Dr. Ravishankar Vedantam, an orthopedic specialist, who diagnosed him as follows: low back pain syndrome, lumbar sprain/strain, degenerative disc disease at L4–5, lumbar spinal stenosis at L4–5, and nicotine addiction. Dr. Vedantam recommended nonoperative treatment for Colburn, including physical therapy and a steroid injection. During a follow-up visit in November 2002, Dr. Vedantam noted that if the current treatment did not help, they might consider surgery. Then, in a report dated January 15, 2003, Dr. Vedantam stated:

> I have discussed the nature of [Colburn's] condition. I have discussed the treatment options including nonoperative and operative modalities of treatment. Operative option would consist of decompression of the lumbar spine with instrumented lumbar spinal fusion at L4–5 via PLIF and posterolateral fusion. I have discussed the pros and cons of each treatment option in detail with the patient. Undoubtedly, risks and complications are associated with the surgical option. I have advised the patient to choose the treatment option based on his quality of life.

Appellee's App. at 6.

In a report dated October 3, 2003, Dr. Vishwajit Brahmbhatt stated:

> Mr. William Colburn returns to the Pain Clinic for followup evaluation of his

chronic lower back pain. This is a workmen's compensation case. Originally, the patient was referred to the Pain Clinic by Dr. Vedantam for an epidural steroid injection. I reviewed his chart. It appeared the patient had stenosis between L4 and L5, and also had a degenerative disk disease with instability at that level. About two months ago the patient was reevaluated by Dr. Vedantam. He did talk to the patient about the possibility of doing a [ ]fusion [surgery] secondary to instability, but *because of the financial situation and the other consideration the patient wants to put off the surgery for now.*

*Id.* at 8 (emphasis added). Then, on March 9, 2004, Colburn underwent an independent medical evaluation ("IME") with Dr. James Fesenmeier, who noted that Colburn "has been reluctant to have surgery because he does not want to take time off work." *Id.* at 9. In addition, Dr. Fesenmeier stated:

I would recommend at this point that the patient have another MRI scan and if he continues to have significant disk protrusion that he consider undergoing lumbar spine surgery. If there still is a significant disk protrusion, I think, this is the only option to try to get a long-term relief. Obviously, weight loss would also help substantially, and I would suggest he stop smoking.

Id. at 10 (emphasis added). Colburn did not get another MRI, as Dr. Fesenmeier recommended.

Several months later, on November 12, 2004, Colburn returned to see Dr. Vedantam for a follow-up visit. Colburn reported that his symptoms had "worsened over the last nine months." Defendant's Exhibit A. In his report, Dr. Vedantam stated:

I have discussed the treatment options for this patient, which include nonoperative and operative modalities. Nonoperative modalities of treatment include anti-inflammatory and analgesic medications, activity modification, epidural steroid injections and physical therapy. Operative option would consist of posterolumbar spinal canal decompression with instrumented lumbar interbody fusion at L4–5. Prior to considering any operative intervention, I would recommend an MRI scan of the lumbar spine and lumbar discography at L3–4 and L4–5 levels. I have discussed the pros and cons of each treatment option in detail with the patient. I have explained to the patient that irrespective of modalities of treatment, it is unlikely that he will have 100% improvement in his symptoms of back pain. Patient understands that surgery is not mandatory. After a detailed discussion of treatment options and benefits and alternatives of each treatment, patient wanted to consider the surgical option in the near future. I have requested [an] MRI scan of the lumbar spine as well as lumbar discography.

Id.

In the meantime, Casualty was liquidated, and Colburn's claim was transferred to the Indiana Insurance Guaranty Association ("IIGA") on August 26, 2004. An IIGA representative, Barbara Bevans, authorized payment for the MRI and lumbar discography that Dr. Vedantam had ordered in November 2004. But when Colburn subsequently sought authorization for surgery, Bevans informed him that the statute of limitations had run on his claim under the Worker's Compensation Act. Because Colburn had not filed an application for adjustment of his claim, Bevans denied him authorization for the surgery.

On December 13, 2004, Colburn filed an application for adjustment of claim against Kessler's. Kessler's moved to dismiss the application, alleging that the Board lacked jurisdiction over Colburn's claim because

the statute of limitations had run in August 2004. A Single Hearing Member dismissed Colburn's application, and the Full Board affirmed that decision. This appeal ensued.

## DISCUSSION AND DECISION

When reviewing the decisions of the Board, we are bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Eads v. Perry Twp. Fire Dep't*, 817 N.E.2d 263, 265 (Ind.Ct.App. 2004), *trans. denied.* Additionally, all unfavorable evidence must be disregarded in favor of an examination of only that evidence and the reasonable inferences therefrom which support the Board's findings. Id. Moreover, we neither reweigh the evidence nor judge the witness's credibility. Id. We review questions of law de novo. *Prentoski v. Five Star Painting, Inc.*, 827 N.E.2d 98, 101 (Ind.Ct.App.2005), *aff'd in part, adopted in part* 837 N.E.2d 972 (Ind. 2005).

Colburn contends that the Full Board erred when it found that his application for change of condition was not timely filed. In particular, Colburn maintains that: (1) the statute of limitations under Indiana Code Section 22–3–3–3 is inapplicable to claims for medical services; and (2) the statute of limitations was tolled since there was no "qualifying disagreement" during the two years following the accident. We address each contention in turn.

Indiana Code Section 22–3–3–3 provides in relevant part: "The right to compensation under [the Worker's Compensation Act] shall be forever barred unless within two (2) years after the occurrence of the accident, or if death results therefrom, within two (2) years after such death, a claim for compensation thereunder shall be filed with the worker's compensation board." Here, Colburn sustained his back injury on August 12, 2002, so the two year statute of limitations ran on August 12, 2004. Because he did not file his application for adjustment of claim until December 2004, it was not timely filed.

But Colburn asserts that the term "compensation" as used in Indiana Code Section 22–3–3–3 does not include payments for medical treatment. Thus, Colburn maintains that the two-year statute of limitations does not apply to his request for medical benefits. In support of that contention, Colburn cites to *Berry v. Anaconda Corp.*, 534 N.E.2d 250, 253 (Ind.Ct.App. 1989), where this court observed:

> Throughout the act a distinction is maintained between awards for medical services and for P.P.I. and T.T.D. benefits. IND. CODE [Section] 22–3–3–27 establishes limitations periods for modification of awarded P.P.I. and T.T.D. benefits. IND. CODE [Section] 22–3–3–4 applies these limitations periods to the modification of awarded medical services and supplies. *Medical services, therefore, are not compensation as that term is used under the act.*

(Emphasis added).

The categorical statement in *Berry* that medical services are not compensation under the Act appears, at first glance, to support Colburn's contention on this issue. But the distinction between medical services and compensation does not mean, as Colburn contends, that the statute of limitations does not apply to medical services. First, in *Berry* we did not interpret or apply the two-year statute of limitations in Indiana Code Section 22–3–3–3. Thus, a careful reading of *Berry* shows that the distinction between medical services and compensation was made in a different context, namely the applicability of statutes of limitations for *modification* of awards under the Act. Second, if, as Colburn con-

tends, Indiana Code Section 22–3–3–3 does not apply to claims for medical services, then there would, in effect, be no statute of limitations for such claims under the Act, which is an untenable result.

■ Indeed, "[l]iability for medical expenses which are incurred by employees as a result of work-related injuries is governed by [Indiana Code Section] 22–3–3–4." *Gregg v. Sun Oil Co.*, 180 Ind.App. 379, 388 N.E.2d 588, 589 (1979). That statute provides in relevant part:

(a) After an injury *and prior to an adjudication of permanent impairment, the employer shall furnish* or cause to be furnished, free of charge to the employee, *an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary*. . . .

(b) During the period of temporary total disability resulting from the injury, the employer shall furnish the physician services, and supplies, and the worker's compensation board may, on proper application of either party, require that treatment by the physician and services and supplies be furnished by or on behalf of the employer as the worker's compensation board may deem reasonably necessary.

(c) After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment and within the statutory period for review in such case as provided in section 27 of this chapter, the *employer may continue to furnish a physician or surgeon and other medical services and supplies,* and the worker's compensation board may within the statutory period for review as provided in section 27 of this chapter, on a proper application of either party, require that treatment by

that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment. . . .

Ind.Code § 22–3–3–4 (emphases added).

■ The plain language of the statute makes clear that an employer's obligation to pay medical expenses is limited to the period of temporary total disability and prior to an adjudication of permanent impairment. And the employer *may* pay additional medical expenses after an injury has been adjudicated by agreement or award. It follows that because an adjudication of permanent impairment must be made within the two-year statute of limitations under Indiana Code Section 22–3–3–3, an employer's obligation to pay medical expenses does not extend beyond two years from the accident date absent an agreement or Board decision otherwise. Here, because there was no temporary total disability or adjudication of permanent impairment within the two-year statute of limitations, Kessler's was not obligated to pay Colburn's medical expenses after August 12, 2004. And we conclude that the statute of limitations on claims for medical services is two years under Indiana Code Section 22–3–3–3.

■ In the alternative, Colburn maintains that the statute of limitations is tolled where there is no disagreement between the parties within two years from the accident date. Indiana Code Section 22–3–4–5 provides:

If the employer and the injured employee . . . disagree in regard to the compensation payable under IC 22–3–2 through IC 22–3–6 or, if they have reached such an agreement, which has been signed by them, filed with and approved by the worker's compensation board, and after-

ward disagree as to the continuance of payments under such agreement, or as to the period for which payments shall be made, or to the amount to be paid, because of a change in conditions since the making of such agreement, either party may then make an application to the board for the determination of the matters in dispute.

This court has held that, under that statute,

> the [Worker's Compensation] Board is not warranted or empowered to conduct a hearing for compensation until there has been a good-faith effort first made to settle or adjust the matter and a failure to agree. *Such good-faith effort to adjust the matter and a failure to agree are conditions precedent to the filing of the claim* except for good cause shown.

*Skinner v. Flat Rock Canning Co.,* 109 Ind.App. 131, 33 N.E.2d 359, 360 (1941) (emphasis added); *see also Globe Valve Corp. v. Thomas,* 424 N.E.2d 155, 157 (Ind. Ct.App.1981) (following *Skinner* and holding that employee's application should have been dismissed where no dispute arose prior to filing). But nothing in *Skinner* or *Globe Valve* supports Colburn's assertion that the lack of a dispute between an employer and employee tolls the statute of limitations. And Indiana Code Section 22–3–4–5 cannot be construed to provide for such tolling.

Nonetheless, Colburn asserts that Kessler's had a duty to get a permanent partial impairment ("PPI") determination within two years from the date of his accident, which Kessler's failed to do. Colburn contends that had Kessler's timely obtained a PPI rating, then a disagreement might have arisen over compensation, which would have permitted him to timely file an application for adjustment of claim. Colburn maintains that an employer's duty to obtain a PPI rating is established by this court's opinion in *Memorial Hosp. v. Szuba,* 705 N.E.2d 519 (Ind.Ct. App.1999). But Colburn misstates our holding in that case. We did not address whether an employer is obligated to obtain a PPI rating prior to the running of the statute of limitations. Rather, we held that an employer is obligated *to pay* for a PPI assessment as part of an employee's necessary medical treatment. *Id.* at 524. We reject Colburn's contention that Kessler's had a duty to timely obtain a PPI rating.[1]

Indeed, in *Globe Valve,* where we held that the Board did not have jurisdiction to consider the employee's application for adjustment of claim, we noted that if the employee thereafter chose to file a claim, "she must first engage herself and Globe Valve in a good faith effort to adjust and agree upon her claim before she files an application with the Board." 424 N.E.2d at 158. Thus, the duty to satisfy the condition precedent to filing an application for adjustment of claim might be said to be with the employee, although we need not decide that issue here. Further, nothing in the Act indicates that an employee should be held to a different standard than a plaintiff in a personal injury case who is responsible for bringing his claim within the general two-year statute of limitations for torts.

■ Finally, Colburn contends that "[a] harmonious construction of the two statutes [Indiana Code Sections 22–3–3–3 and 22–3–4–5] is impossible to achieve without affording employers a tremendous loophole by which they could lawfully avoid providing future medical services for compensa-

1. Because we hold that Kessler's owed no duty to obtain a PPI rating, we need not address Colburn's contention that the statute of limitations was tolled by fraudulent concealment.

ble injuries, as well as compensation for permanent partial impairment." Brief of Appellant at 15. Colburn maintains that under Kessler's interpretation of the statutes, employers have an incentive to "string out employees suspected to have significant PPI ratings (with correspondingly large damages owed), promise and provide to those employees treatment and even rehabilitation for two years following a workplace accident, and then, without concern, shut those employees out" and deny further treatment after the statute of limitations has run. *Id.* at 18. Colburn asserts that because the Act is to be liberally construed in favor of employees, and because "the law does not favor litigation," we should construe the Act "to provide that the expiration of the two year statute of limitations imposed by I.C. § 22–3–3–3 is not effective to bar a claimant's claim where no disagreement has arisen prior to the expiration of the statute." *Id.*

We decline Colburn's invitation to so construe the Act based on public policy considerations. First, Colburn has not demonstrated that anything prevented him from resolving or preserving his claim prior to the expiration of the two-year statute of limitations. As the Single Hearing Member concluded, "Colburn made the decision, more than once, to forego surgery[,]" which had been a serious topic of discussion with his physicians beginning shortly after his accident in 2002. Appellant's App. at 43. Had Colburn decided to undergo surgery earlier, he would have likely obtained a PPI prior to the expiration of the statute of limitations, which would have expedited the claim process.

In addition, we agree with the Single Hearing Member's Conclusion No. 4:

Finally, while we are sympathetic to Colburn's situation, in this day and age people are generally aware of limitations on their various rights whether to vote in a timely manner, to claim tax refunds, to pursue a personal injury claim, etc. So even though Colburn may not have known the exact cutoff date, at some point he had an affirmative obligation to explore and to educate himself about the nature and duration of his rights.

*Id.* at 44. In sum, we hold that, under the circumstances of this case, the Board's decision barring Colburn's application for adjustment of claim does not violate public policy.

Affirmed.

SHARPNACK, J., and ROBB, J., concur.